**WEBBER v. KNOX, Acting Collector of Internal Revenue.**

No. 11052.

Circuit Court of Appeals, Eighth Circuit.

July 19, 1938.

Henry C. Carlson, of Minneapolis, Minn. (G. Aaron Youngquist and Fowler, Youngquist, Furber, Taney & Johnson, all of Minneapolis, Minn., on the brief), for appellant.

Donald J. Marran, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Victor E. Anderson, United States Attorney, and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., on the brief), for appellee.

Before GARDNER, WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The complaint of Mr. Charles C. Webber, a taxpayer, against the Collector of Internal Revenue for Minnesota, was demurred to on the ground that it did not state facts sufficient to constitute a cause of action, and the demurrer having been sustained, the complaint was dismissed. Mr. Webber appeals.

The facts alleged in the complaint and the grounds of decision against Mr. Webber are set forth in the opinion filed by the trial court as follows:

"Plaintiff, a taxpayer, brings this action to recover from the Collector a refund of the 1933 federal income taxes in the amount of $23,403.01, with interest. It appears from the bill that the taxpayer made a return for the year 1933 and paid a tax thereon of $13,392.20. The return included a gain of $118,161.07 over the March 1, 1913, value of certain shares of Deere & Co. stock on which the taxpayer paid a tax of 12½% per annum, which is the rate of tax applied to gains from the sale of 'capital assets' by the Revenue Act of 1932. The Commissioner claimed that the stock was not a 'capital asset' within the meaning of the Act, and assessed a deficiency of $23,403.01, which the taxpayer paid. The sole question which is presented by the bill and demurrer thereto is whether the Deere & Co. stock was a 'capital asset' so that the gain from the sale thereof was taxable at 12½% instead of as ordinary income under the normal and surtax rates as claimed by the taxpayer.

"The pertinent portion of the Revenue Act of 1932, Section 101(a) (8), 26 U.S. C.A. § 101 note reads:

"'Capital assets' means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. * * *

"The taxpayer asserts that he held the stock for more than two years prior to its sale, and that the gain therefrom is limited to a tax of 12½%. Whether plaintiff held the stock for more than the prescribed number of years must be determined from the facts set forth in the bill. It appears that in the year 1925 plaintiff owned stock in corporations domiciled in states other than Minnesota, where he resided. The law as it was then interpreted imposed multiple state inheritance taxes on the succession of said stock upon his death. For the sole purpose of avoiding such supposed multiple inheritance taxes, the plaintiff organized a holding company called the C. C. Webber Company, and transferred to it all of his said securities and took in return thereof all of the stock of the holding company. The taxpayer continued to hold the stock of the holding company, except as from time to time he surrendered to it its stock upon the withdrawal from the holding company of the securities which he had thus transferred. Upon organization of the C. C. Webber Company, he transferred to it 7,240 shares of the common stock of Deere & Co. On April 14, 1930, the holding company received a stock dividend from Deere & Co. of 108.6 shares. On May 6, 1930, the holding company transferred 540 shares of the Deere & Co. stock, leaving in its hands 6,808.6 shares, which were split five for one, resulting in 34,043 shares. On subsequent dates in 1930 and 1931, the C. C. Webber Company received from Deere & Co. as stock dividends 1,555 shares, making a total of 35,598 shares for the 7,240 shares of Deere & Co. stock originally transferred to C. C. Webber Company. The plaintiff received 2,172 shares of the stock of C. C. Webber Company of a par value of $100 each. The 7,240 shares transferred had a value on that date of $724,000. All of the issued stock of the holding company was held by the plaintiff.

"On June 6, 1933, the plaintiff surrendered to the holding company 282.6 shares of its stock and received from it 5,000 shares of the common stock of Deere & Co., which was acquired by the holding company as stated in the previous paragraph, and this 5,000 shares was sold on June 29, 1933, at a gain of $118,161.07 over the March 1, 1913, value. The 282.6 shares so surrendered was the exact equivalent of what he had received from said company for the 5,000 shares of Deere & Co. stock. In the various withdrawals of securities from the holding company that were made by the plaintiff, there was no necessary relation between the value of the stock transferred by the holding company and the value of his own stock surrendered to it, except for each lot of stock transferred by the holding company, there was surrendered to it the equivalent in units of stock issued therefor by the holding company in 1925 when it was organized. It further appears from the complaint that the sole function of the holding company was to receive dividends upon stock held in its name and to transfer from time to time such stock as the plaintiff might desire to withdraw under the arrangements above referred to. The holding company did not buy, sell, or deal in stocks and securities and it had no transactions with third parties. It is alleged that plaintiff never used the holding company to minimize or affect in any way his income taxes.

"Defendant contends that the complaint does not state sufficient facts to constitute a cause of action in that it states that the plaintiff received the stock of Deere & Co. on June 6, 1933, from a separate, distinct entity, namely, the C. C. Webber Company, and sold the same on June 29, 1933, a period of less than one month.

"Plaintiff contends that, in light of the legislative purpose of the statute, he has held the stock for more than two years; that so far as the statute is concerned, the holding company and the taxpayer should be considered as one; and that therefore the gain from the sale of said stock was not subject to more than a 12½% tax.

"Taxing statutes are generally construed with strictness. Crooks v. Harrelson, 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156. It must be recognized that the stock was not 'held' by the taxpayer for two years, unless the identity of the corporation and the taxpayer is to be considered as one. The taxpayer concedes that 'as a general rule a corporation and its stockholders are deemed separate entities,' but he relies on the proposition that 'the rule is subject to the qualification that the separate entity may be disregarded in exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights,' citing New Colonial Ice Co. v. Helvering, 1934, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348. It can scarcely be urged that the bill of

complaint sets forth any reasons or justifies the construction that the separate identity of a corporation should be disregarded as a protection or enforcement of public rights. But are there such exceptional circumstances that the taxpayer should be permitted to disregard the separate identity of the corporation which he created in order to protect or enforce private rights? It is contended that the purpose of the statute is to discourage speculation which would result from the sale of assets within so short a time as two years after their acquisition. We are not enlightened by any wording of the statute which indicates its purpose. It is not ambiguous, nor are its provisions abstruse. But even assuming that the taxpayer is correct that the purpose is as stated, and that such purpose should be considered in applying the provisions of the statute, it does not follow that the taxpayer can create a corporation for the purpose of establishing a separate identity as between himself and the corporation and insist on such separateness when it suits his purpose, but ignore the separate identity of the corporation when his interests are adversely affected. It would be an anomalous doctrine that would permit the taxpayer to seek refuge in the exception to the general rule under such circumstances. He intended that the stock in question should be 'held' by the holding company so that the state of Minnesota, and the states of the domicile of the corporations whose stock was thus transferred, could not both levy an inheritance tax on the succession of such stock upon his demise. That which he intended was apparently established. These circumstances do not give rise to any rights in behalf of the creator thereof which now require an undoing of that which was done. Certainly, no injustice will result 'to private rights' if it is now determined that the corporate separateness which the taxpayer intended still continues and should not be disregarded. While that which was designed or intended may not in all instances be controlling—United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180—it would in this instance have a bearing upon the protection that should be afforded to the taxpayer's rights. Not only did the taxpayer intend to create corporate separateness, but that was what was done. The corporation held the Deere & Co. stock; he held the stock of the holding company. When he desired to obtain such stock so that he could personally 'hold' it, he de-

livered to the holding company its stock and withdrew the securities. Stock dividends were delivered to the holding company, not to the taxpayer. The original securities which were first transferred in 1925 were thereafter split five to one. This transaction as well was handled between the holding company and Deere & Co. The fact that the taxpayer was the only stockholder has been held to be of no legal significance. Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399. The cases of Southern Pacific Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 62 L.Ed. 1142; Munson S. S. Line v. Commissioner, 2 Cir., 77 F.2d 849, and North Jersey Title Insurance Company v. Commissioner, 3 Cir., 84 F.2d 898, deal with entirely different facts and circumstances. The recognition of the exception under the circumstances in these cases will not avail the plaintiff herein. United States v. Phellis, supra; Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed 397; Burnet v. Commonwealth Improvement Company, supra; New Colonial Ice Co. v. Helvering, supra; Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389.

"It is the Court's opinion that the demurrer should be sustained, and it is so ordered."

The point argued in this court by the appellant is that the case presents an exceptional situation where the sole stockholder and the corporation should be regarded as identical for the purpose of computing the holding period under the capital gains provisions of the Revenue Act of 1932. We are persuaded that the point should be ruled against the appellant upon the reasons and precedents presented by the District Court. Additional cases cited in the brief of appellant have also been considered. Gulf Oil Corp. v. Lewellyn, 1918, 248 U.S. 71, 39 S.Ct. 35, 63 L.Ed. 133; U. S. v. Lehigh Valley R. Co., 1911, 220 U.S. 257, 31 S.Ct. 387, 55 L.Ed. 458; Chicago, M. & St. P. R. Co. v. Minneapolis Civic & Commerce Ass'n, 1918, 247 U.S. 490, 38 S.Ct. 553, 62 L.Ed. 1229; Law v. McLaughlin, D.C.1933, 2 F.Supp. 601; Schoenheit v. Lucas, 4 Cir., 1930, 44 F.2d 476; Heafey v. Allen, D.C.1929, 34 F.2d 941; Hinkel v. Motter, D.C.1930, 39 F.2d 159; Olds & Whipple, Inc., v. Commissioner, 2 Cir., 1935, 75 F.2d 272; Crossett Western Co. v. Commissioner, 3 Cir., 73

924

F.2d 307, 308; Bourjois, Inc., v. Mc-Gowan, D.C.1935, 12 F.Supp. 787, affirmed 2 Cir., 85 F.2d 510, certiorari denied 300 U.S. 682, 57 S.Ct. 753, 81 L.Ed. 885; Inecto, Inc., v. Higgins, D.C.1937, 21 F. Supp. 418. None seems to us to sustain the point contended for by appellant. The opinion appears to us to correctly state the issues and the law.

Affirmed.