## THOMPSON'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 39.

Circuit Court of Appeals, Second Circuit.

Nov. 17, 1941.

Emmet, Marvin & Martin, of New York City (George W. Martin, of New York City, of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Gerald L. Wallace, and Louise Foster, Sp. Assts. to Atty. Gen., for respondent.

Before SWAN, CHASE, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

On May 15, 1907, Mary G. Thompson executed a will, naming her brother and sister as life beneficiaries of her estate

and six charities as remaindermen. She died on April 22, 1935, and her will was probated on March 12, 1936. Letters testamentary were issued to the Bank of New York, the executor and petitioner here. Formal objections to the probate were filed by Robert D. L. Gardiner, who, as next-of-kin of the testator, was entitled to 25% of Mary G. Thompson's intestate estate, if any. His objection was based, among other grounds, on alleged fraud and misrepresentation by the Bank of New York, exerted through Charles G. Thompson, testator's brother, who, like Mary's sister, had executed an identical will on the same day. While denying the truth of Gardiner's allegations, the residuary legatees agreed to convey to him and his sister, who had a similar 25% interest in Mary's intestacy, real property worth $125,000 and $200,000 in cash as a compromise for a release of their claims. This agreement was dated June 15, 1936, and provides that "it is the intent of the parties hereto that the foregoing payments and transfers shall be the absolute limit of the liability, direct or indirect of the Residuary Legatees and/or the Executor."

The Commissioner of Internal Revenue asserted that the charitable deductions taken by the executor under § 303(a) (3) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 232, must be reduced, and the net estate accordingly increased, by the amounts paid by the charities to Gardiner and his sister in settlement of their claim. His position was upheld by the Board of Tax Appeals, and the deficiency was assessed at $120,612.26. The executor now petitions for review.

The question presented, therefore, is whether § 303(a) (3) permits deduction of the full amount distributed by the executor to charities, where they pay something to the next-of-kin in settlement of objections to probate.[1] The uncertainties[2] that once existed in the treatment for tax purposes of amounts paid to settle will contests have in many respects been cleared up by Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 159, 83 L.Ed. 119, 119 A.L.R. 410. It was

there held that amounts received by an heir in settlement of a threatened will contest were received "by inheritance" so as to be exempt, in his hands, from income tax under § 22(b) (3) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Code, § 22(b) (3). The Supreme Court said: "There is no question that petitioner obtained that portion, upon the value of which he is sought to be taxed, because of his standing as an heir and of his claim in that capacity. It does not seem to be questioned that if the contest had been fought to a finish and petitioner had succeeded, the property which he would have received would have been exempt under the federal act. Nor is it questioned that if in any appropriate proceeding, instituted by him as heir, he had recovered judgment for a part of the estate, that part would have been acquired by inheritance within the meaning of the act. We think that the distinction sought to be made between acquisition through such a judgment and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound, as it disregards the substance of the statutory exemption. It does so, because it disregards the heirship which underlay the compromise, the status which commanded that agreement and was recognized by it."

■ The case before us is controlled by this reasoning. While there are no doubt areas both of gap and of overlap in the field of federal taxation,[3] we cannot lightly assume that the contestants take "by inheritance," so as to be free from income tax, the very same amounts which the charities receive as "legacies" so as to permit an estate tax deduction. Applying the reasoning of Lyeth v. Hoey, supra, if the next-of-kin had contested the will and won a judgment, the charitable deduction would certainly be reduced pro tanto. Similarly, if by a settlement agreement the executor had paid the next-of-kin a sum to withdraw their objections, we would refuse, as the Supreme Court did, to ignore "the status which commanded that agreement and was recognized by it." The fact that the charities, rather than the executor,

---

[1] Although the petitioner urges that this issue was not raised by the pleadings before the Board, it is clear that this was the issue tried there. The petition included as an exhibit the Commissioner's "statement," which advanced the compromise payments as the grounds of his deficiency. These payments were the heart of the case, so recognized by both parties; there was, at most, a formal defect in the pleadings, of no consequence to either party.

[2] Muriel S. Paul, The Federal Tax Status of Will Contestants, in Paul, Selected Studies in Federal Taxation, 2d Series (1938).

[3] Cf. Warren, Correlation of Gift and Estate Taxes, 55 Harv.L.Rev. (1941) 1.

made the payment is immaterial; he was no stranger to the agreement, but, even if he were, the effect of the payments would have been no different. We hold, therefore, that the charitable deduction is to be reduced by the amount paid by the charities to the next-of-kin to prevent the contest.

In this, we are supported by a recent decision of the Circuit Court of Appeals for the Third Circuit, In re Sage's Estate (Sage v. Commissioner), 122 F.2d 480. Appellant seeks to distinguish that case because there the charity agreed to pay, as appeasement money, a percentage of the amount received from the estate, while here the sum promised was not made dependent on the actual receipt by the charities of anything. That this is not entirely accurate is shown by the fact that part of the consideration was the delivery of a deed to a house then owned by the estate. Even as an independent obligation, however, it cannot be severed from its purpose of insuring the charities against an upset of the will. In no real sense can it be said to differ from the payment in the Sage case. Petitioner relies heavily on Robbins v. Commissioner, 1 Cir., 111 F.2d 828, where the executor was not permitted to deduct the present value of an amount to be paid to Amherst College as a result of a compromise agreement. We need not pass on that situation now; it is sufficiently distinguished from the one before us by the fact that Amherst College, unlike the next-of-kin here, had no status to contest the will.

■ Petitioner also contends that the deductions cannot be reduced, at least not in full, by the $325,000 because, in part, it was paid to protect the estates of the testator's brother and sister against claims by the next-of-kin. Any such claims seem to have been formal only; at least, in the absence of evidence showing that part of the payment can fairly be allocated to the release of such claims, we are not justified in making an arbitrary allocation.

■ Since the charitable deduction was reduced by $325,000, a larger tax was payable by the estate. This tax, if it was to come out of the residue of the estate, would still further reduce the amounts received by the charities (as residuary legatees), thus increasing the tax still more, etc. By a formula whose application is not disputed, a total deficiency of $120,-612.26 was computed by the Commissioner and determined by the Board. Petitioner asserts, however, that the tax resulting from the increase of the net estate by $325,000 is not payable out of the residue, and hence should not be used to reduce the allowable deductions. Its argument that the compromise agreement, by making the payments the "absolute limit of the liability direct or indirect of the residuary legatees," saves the residue from liability for the tax is obviously fallacious. No such private agreement can foreclose the government. Petitioner relies, alternatively, on § 124 of the New York Decedent Estate Law, providing that the surrogate may apportion the payment of estate taxes among all distributees. If applied here, petitioner argues, that statute would prorate the incidence of the tax on the $325,-000 between the next-of-kin and the residuary legatees; only that part of the tax apportioned to the residuary legatees would operate to reduce the charitable deductions; and the additional tax due, as determined by the applicable formula, would be less than the amount determined here. Petitioner, however, did not establish, either by a decree of the surrogate or by reference to cases, that the apportionment statute is applicable to taxes resulting from amounts paid under a compromise. In the absence of a showing that an apportionment is required, we must affirm the decision of the Board on this issue as well.