## COMMISSIONER OF INTERNAL REVENUE v. MACAULAY'S ESTATE et al.

### No. 299.

Circuit Court of Appeals, Second Circuit.

July 24, 1945.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for petitioner, Commissioner of Internal Revenue.

William Fitzgibbon and Sandow Holman, both of New York City, for Nathan L. Miller and Lawrence Cavanagh, executors, respondents.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On April 20, 1938, the testatrix, Mrs. Macaulay, made a gift to her husband of 5,000 shares of first preferred stock of Niagara Hudson Power Corporation, and on July 1, 1938, of certain house furnishings and art objects. At the time of her death, which was November 24, 1938, the stock had a fair market value of $428,750. Gift taxes were paid on the foregoing donations. In October 1937 Mrs. Macaulay

made a will in which she bequeathed to her husband a legacy of $1,000,000. At about the same time she told Governor Nathan L. Miller, her legal adviser and one of the executors named in her will, that she was thinking of giving her husband securities in an amount sufficient to yield an income of $25,000 per year so that he could meet the additional expenses he was under because of his official position as Irish Envoy to the Vatican. The stock of the Niagara Hudson Power Corporation was apparently given to fulfil the expectations she had expressed but there was no indication that she intended the gift as an advancement on account of the $1,000,000 bequest to her husband. Nevertheless, at the suggestion of Governor Miller, the gift of stock was treated in the judicial accounting in the Surrogate's Court as an advance of $400,000 upon the $1,000,000 legacy and the balance, that is $600,000, was accepted by Mr. Macaulay as a full discharge of the entire bequest on the part of the executors. Under the Seventh or residuary clause of her will the decedent gave 46% of her residuary estate to various charities and in Article V of the Seventh Clause provided as follows:

"V. In the event of the death before my decease, or the incapacity to take, of any legatee hereinbefore mentioned, or of the invalidity or ineffectiveness for any reason of any bequest hereinbefore made, for which eventuality no other or different provision shall have been made, I give, devise and bequeath the share, shares or sum so attempted to be bequeathed, to the survivors and to the corporations having capacity to take at the time of my decease of those mentioned as legatees in this "Seventh" paragraph or residuary clause of my Will in proportion to the number of shares of my residuary estate given and bequeathed to each respectively as aforesaid."

The executors in setting forth the amount of charitable deductions in their estate tax return included the amount represented by the disclaimed legacy of $400,000 in the residuary estate, 46% of which, as we have already said, was bequeathed to charity. This was due to the advice of Governor Miller, probably founded on the following provision of decedent's will:

"* * * I may * * * make advances to some of the legatees herein named on account of their said legacies, and to the extent that I may make such advances, I direct that all legacies upon which advances shall have been made by me shall to the extent thereof abate."

The executors filed their estate tax return on February 20, 1940, and the Commissioner assessed the tax upon the theory that the gift of stock which the decedent made to her husband was in contemplation of death and hence was to be treated as part of her estate for tax purposes. The Tax Court rejected the theory that the gift was made in contemplation of death. In spite of the treatment of it as an advancement before the Surrogate, it was held that it was not an advancement and this holding was in accordance with the New York law as established in Bowron v. Kent, 190 N.Y. 422, 83 N.E. 472, and Matter of Farmers' Loan & Trust Co., 181 App.Div. 642, 168 N.Y.S. 952, affirmed 225 N.Y. 666, 122 N.E. 880. The Tax Court required recomputation of the tax in accordance with the opinion.

Upon disclaimer by the legatee of $400,000 of his legacy, the $400,000 passed into the residuary estate, 46% of which was devised to charity. The taxpayer's recomputation of the tax, which was accepted by the Tax Court, treated 46% of the $400,000 disclaimed as exempt from the taxable estate as a charitable bequest. The Tax Court's final order determined that the executors had made an overpayment of $109,682.89, doubtless upon the theory that the disclaimer related back to the date of death. From this the Commissioner has appealed.

The Commissioner objects to the decision on the ground that the "legacy which the decedent intended to give to her husband should not, by his action after her death, increase a deduction, which is intended to reflect the decedent's gift to charity."

The provision of the Revenue Act of 1926, c. 27, 44 Stat. 9, directly applicable to the taxation of Mrs. Macaulay's estate read as follows:

"Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

"(a) [as amended by section 403(a) of the Revenue Act of 1934, c. 277, 48 Stat. 680]. In the case of a citizen or resident of the United States, by deducting from the value of the gross estate—

\* \* \* \* \*

"(3) The amount of all bequests, legacies, devises, or transfers, to or for the use of the United States, any State, Terri-

tory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes. * * *." 26 U.S.C.A. Int.Rev.Acts, pages 232, 235.

In 1942 a further amendment to Section 303(a) (3) of the Act of 1926 was made which included in the amount of all charitable bequests, legacies, devises or transfers by a citizen or resident of the United States "the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made prior to the date prescribed for the filing of the estate tax return." Section 408(a) of the Revenue Act of 1942.

Section 408(c) of that Act provides: "The amendments made by this section shall be applicable to estates of decedents dying after February 10, 1939." Mrs. Macaulay's death in November, 1938, was before the date upon which the statutory amendment took effect. Counsel have argued at length whether the 1942 amendment was passed to clarify or declare existing law, or whether it was passed to change the existing law. The legislative history of the amendment seems to indicate that the Congressional intent was clarification rather than alteration. This appears from quotation from proceedings before the Congressional Committee set forth below.[1]

 It is evident from the proceedings in Congress that the amendment was intended to be applicable to two different

---

[1] The amendment was first proposed in the Senate in 1941, at which time the following colloquy took place (Cong.Record, Vol. 87—Part 7, September 5, 1941, p. 7367):

"Mr. Bailey. Mr. President, the amendment is technical in character. Its purpose is clarification. I think it squares with the law as it is. I have submitted it to the chairman of the Finance Committee of the Senate, and have said to him that I would not press for it unless it were agreeable to him. I wish it to go in the bill for the purposes of conference. If it needs any changes, the changes can be made there; but the effect of the amendment is this:

"The Senator from Georgia will recall our recent conversation about a question which was presented to me. The question is whether there is any possibility of an interpretation of section 812 (d) of the Internal Revenue Code to the effect that the deduction for charitable bequests excludes property passing under a residuary bequest to charity where a specific bequest of the same property has been renounced. For example, a will may provide for a specific bequest to a designated beneficiary, the residue to go to charity. The designated beneficiary renounces the bequest, it thereupon falls into the residuary bequest to charity, and, as a result, the amount actually going to charity under the will is increased.

"I have examined the present law myself and am convinced that section 812 (d) is applicable to the entire amount passing to charity. At the same time, it may be well to have the statute clarified and to provide specifically for this situation. Accordingly, I have offered an appropriate clarifying amendment, inter-

preting the present law. I urge the chairman of the Committee on Finance to accept it.

"I shall be glad to hear from the chairman of the Committee in regard to this matter.

"Mr. George. I will repeat to the Senator from North Carolina that I see no necessity for the amendment. It seems clear that the situation he has described is adequately covered by the present law and that the entire amount of the funds ultimately going to charity under the will falls within the deduction under section 812 (d). Since I have not had an opportunity to examine the matter fully, however, I think we should accept the amendment so that we can study the problem further. If we become satisfied that the amendment is not necessary, the amendment can be rejected in conference. However, if further study indicates that there is a possible ambiguity in the statute, I shall urge the acceptance of the amendment in order to eliminate all possibility of a contrary position. Whether the decedent died before or after the adoption of the amendment, there should be no doubt as to the complete deduction under the present law. The donor to the charity is in fact the giver of the legacy to the charity."

Whether it was because the law was considered too clear to warrant a clarifying amendment, or because of some legislative complication, the amendment failed of passage in 1941. It was, however, again recommended by the Treasury in 1942. During the Senate Finance Committee hearings upon the Revenue Act of 1942, the following discussion of the proposed amendment took place: (Hearings before the Committee on Fi-

situations: First, to the case of a specific charitable bequest which a decedent by will had empowered another to divert to other purposes, and which under existing law was not allowable as a charitable deduction, and second, to the case of a disclaimed legacy which under the law of wills would fall into a residuary estate bequeathed to charity. In addition to this the amendment in either case set a definite limit (which had not before existed) in the case of the estates of decedents dying after February 10, 1939, to the time within which a disclaimer must be made to render a legacy deductible from the taxable estate. Beyond setting a time limit the effect of the amendment, so far as it related to disclaimers, was only to clarify the existing statute. In making this clarification Congress was not attempting to exercise a doubtful power to

nance, United States Senate, 77th Cong., Vol. 1, p. 116):

"Mr. O'Brien. Page 269, line 15, permits a deduction for estate-tax purposes in case a disclaimed legacy passes to charity. The situation is one in which, let us say, the residuary legatee of the estate is the charity. The decedent's son disclaims his legacy, and the result is that the amount of that legacy goes to charity. This says the amount of that legacy going to charity shall be considered just as if it were a bequest directly to charity.

"Senator Connally. Does that apply to lapsed legacies? Suppose the son died, and there is no change in the will, that legacy would lapse?

"Mr. O'Brien. Lapse?

"Senator Connally. Yes. It would be the same in legal effect as if he disclaimed?

"Mr. O'Brien. Yes.

"Senator Connally. I do not know whether the word 'disclaimed' would cover it or not.

"Mr. O'Brien. Well, lapsed legacies now are covered.

"The Chairman. That is already in the law.

"Mr. Paul. Confusion had arisen where there was not a disclaimer, and we are trying to correct that.

"The Chairman. This disclaimer must be made prior to the date of the filing of the tax return; is that right?

"Mr. O'Brien. Yes. This amendment is made retroactive and applicable to estates of decedents dying after December 10, 1939. That is the date of the enactment of the Internal Revenue Code."

Further indications of the purpose of the amendment are offered in the following excerpts from the House Committee on Ways and Means (H. Rep. No. 2333, 77th Cong., 2d Sess., pp. 59, 166, 167):

"7. Deduction for Disclaimed Legacies. Under the present law there is considerable difficulty in determining proper treatment in the case of renounced or disclaimed legacies which upon such renunciation or disclaimer by the beneficiary go to charity. For example, if A makes a specific bequest of $10,000 to his son B and gives the residue of his estate to charity, if the son renounces the $10,000 bequest, it will also go to charity. This amendment settles this controversy by a specific statutory declaration that in such cases of renounced or disclaimed legacies the estate will be allowed a deduction therefor as a charitable bequest.

\* \* \* \* \* \*

"Section. 408. Deduction for Disclaimed Legacies Passing to Charities.

"Under existing law a deduction for a bequest, legacy, devise, or transfer for charitable and related purposes within the meaning of section 812 (d) or 861 (a) (3) of the Code is not allowable to the extent that the decedent empowers another to divert such bequest, legacy, devise, or transfer to another purpose. Moreover, it is not clear whether a deduction of the value of the residuary estate bequeathed or devised for charitable and related purposes includes an amount disclaimed by a specific beneficiary and therefore falling into the residuary estate. In both cases a deduction should be allowed in the full amount passing for charitable and related purposes if the disclaimer of the power or of the specific bequest or devise is prompt. This section therefore amends sections 812 (d) and 861 (a) (3) to assure this result, if there is an irrevocable disclaimer prior to the date prescribed for the filing of the estate tax return. Under the regulations this date occurs 15 months after the date of death of the decedent. A disclaimer is a complete refusal to accept the rights to which one is entitled. If the beneficiary uses these rights for his own purposes, as by receiving a consideration for his formal disclaimer, he has not refused the rights to which he was entitled. There can be no disclaimer after an acceptance of such rights, expressly or impliedly.

"The amendment made by this section is applicable to estates of decedents dying after February 10, 1939, that is, all estates subject to the provisions of the Code."

declare the meaning of its own prior statute irrespective of any existing clarity but was giving a persuasive and weighty interpretation of the scope of a preexisting exemption much as legislative agencies constantly do under authorized regulations. This interpretation was not affected by the time when the amendment was to take effect which related only to the statutory changes in the earlier Act. Under such circumstances we think that there is a strong ground for construing the exemption as covering 46% of the $400,000 which was renounced in this case. The amendment allowed a greater exemption after February 10, 1939, than before in respect to certain powers, but plainly was not intended to alter the status of renounced legacies passing to charity except in setting a definite period within which the renunciation must be made.

Under settled law a disclaimed legacy falls into the residuary estate and is disposed of in accordance with the clause of the will governing the disposal of that estate. Albany Hospital v. Albany Guardian Society, 214 N.Y. 435, 445, 108 N.E. 812, Ann.Cas.1916D, 1195. Indeed in the present case Clause V of Mrs. Macaulay's will so provided. Accordingly when the legacy was disclaimed to the extent of $400,000, the $400,000 became a part of the residuary estate and by the terms of the will 46% of it passed to charity and fell within the statutory exemption covering: "The amount of all bequests, legacies, devises or transfers * * * to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *." This result accords with the state decisions in connection with similar tax provisions. See Matter of DeLamar's Estate, 203 App.Div. 638, 197 N.Y.S. 301, affirmed 236 N.Y. 604, 142 N.E. 301; Bouse v. Hull, 168 Md. 1, 176 A. 645; Matter of Stone's Estate, 132 Iowa 136, 109 N.W. 455, 10 Ann.Cas. 1033; State v. Probate Court, 143 Minn. 77, 172 N.W. 902.

It is true that in Davison v. Commissioner of Internal Revenue, 81 F.2d 16, we held that the renunciation, six years after the testator's death, of a power of appointment which might have been used to defeat certain charitable bequests did not relate back to the date of the death of the testator. That holding did not conflict with our present decision and amounts to no more than saying that a delay of six years created such an uncertainty in the charitable bequest that the amount of the bequest would not be deductible. In other words we set a limit to the time when a disclaimer is effective for tax purposes which has since been fixed by the Amendment of 1942. The Commissioner has not contended that the disclaimer was not made with reasonable promptness in the case at bar nor does the record indicate such a thing.

In Burdick v. Commissioner, 2 Cir., 117 F.2d 972, certiorari denied 314 U.S. 631, 62 S.Ct. 63, 86 L.Ed. 506, a will provided bequests to such charitable institutions as the testator's nephew and sister should select within one year after the probate of the will. In the event no selection should be made the bequests were to lapse and the amount bequeathed was to pass to non-exempt persons. Thus the sister and nephew were given powers, by omitting to make any selection, to divert the bequests from their charitable objects. In that case we denied any exemption. It is well settled that where a third party has a power to divert gifts from charitable to non-charitable objects the gifts are not deductible even though the power of diversion shall never be exercised. The fact that the powers could be exercised by the nephew and sister by refraining from making any selection would not alter the principle. The decisions in Knoernschild v. Commissioner, 7 Cir., 97 F.2d 213, and First Trust Co. of St. Paul State Bank v. Reynolds, 8 Cir., 137 F.2d 518, proceeded upon the same theory.

Where the devolution of a bequest to charity has been brought about through a voluntary disclaimer of statutory rights to take in derogation of the provisions of a will it has frequently been held that the tax exemptions should be allowed. Dimock v. Corwin, 2 Cir., 99 F.2d 799, affirmed 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763; Humphrey v. Millard, 2 Cir., 79 F.2d 107; Commissioner v. First National Bank of Atlanta, 5 Cir., 102 F.2d 129. We see no difference between a renunciation of a legacy which causes the amount to pass to charity and the waiver of a right to take in derogation of the provisions of a will whch give bequests to charity greater than a statute permits. While it is true that there has been some confusion in the theories adopted among the decisions we have previously referred to, we know of

no decision which has denied tax exemption to a disclaimed bequest which has passed to charity. In view of the legislative history we have given of the 1942 amendment, the decisions of state courts granting exemption to legacies falling through disclaimer into a residuary bequest given to charity, and the federal court decisions which are applicable in principle to the case at bar, we think that the Tax Court was right in allowing an exemption in the present case and that its order should be affirmed.