**DELANEY v. GARDNER et al.**

No. 4696.

United States Court of Appeals First Circuit.

June 5, 1953.

Harry Marselli, Sp. Asst. to Atty. Gen. (Charles S. Lyon, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott and Maryhelen Wigle, Sp. Assts. to Atty. Gen., George F. Garrity, U. S. Atty., and Philip T. Jones, Asst. U. S. Atty., both of Boston, Mass., on brief), for appellant.

Earle W. Carr, Boston, Mass. (Joseph P. Rooney and Gaston, Snow, Rice & Boyd, Boston, Mass., on brief), for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment entered in the United States District Court for the District of Massachusetts on June 19, 1952 for the taxpayers in an action brought for a refund of estate taxes.

The taxpayers are the two executors under the will of Olga E. Monks, a Massachusetts resident who died on April 22, 1944. The will was dated March 18, 1939 and was allowed by the Probate Court for Suffolk County, Massachusetts, on May 18, 1944. An estate tax return was duly filed and the tax paid about July 20, 1945.

On audit of the return, the Collector asserted a deficiency of $64,216.71, based on the disallowance of a deduction claimed, and the inclusion in Mrs. Monks' estate of an inter vivos transfer. The deficiencies were paid by the taxpayers on September 24 and December 30, 1946, and a claim for refund was filed on September 13, 1949. After the claim was disallowed on February 16, 1950, the plaintiffs commenced this action.

The two questions which we need to consider on this appeal concern (1) the deductibility of a claimed testamentary disposition to charity, and (2) the includability in the gross estate of the value of securities transferred by the testator in her lifetime to a family corporation.

Article Second of the will of Olga E. Monks provides:

"I give to my executors or administrators with the will annexed One Hundred Thousand ($100,000) Dollars, not subject to any trust, but in the hope that they will dispose of it at their absolute discretion and according to their own judgment, but giving due weight to any memoranda I may leave or any oral expressions by me to them made during my life."

A memorandum and accompanying identifying letter addressed to the executors, dated the same day as the will, were allowed by the Probate Court as a part of the will. The memorandum consisted of a list of individuals and institutions with amounts opposite their names and the letter read in part: "I have purposely not bound you to carry out any wishes I may express for I can not foresee the future and have confidence that you will act wisely and will do as seems best, and possible when the time comes. I am, however, enclosing a list, of of persons and institutions, who I should like to remember and the amounts I have assigned would at this time, seem to me suitable but as I have already said you are free to disregard my suggestions."

One of the executors, George Peabody Gardner, a nephew of the decedent Mrs. Monks, testified that this method of disposition was undertaken upon his advice, with his assurance to her that he and her sons,

who were named as the other executors, would endeavor to carry out her desires. There was evidence that the executors distributed the gifts listed in the memorandum, with a few exceptions due to changed circumstances of particular individuals. Thirty-five thousand dollars of the amount so distributed was paid, prior to the filing of the Federal Estate Tax Return, to charitable or religious institutions within the meaning of § 812(d) of the Internal Revenue Code.

The Commissioner ruled that these payments to religious or charitable institutions could not be deducted on the ground that they were not disclosed in the will and there was no legal obligation on the executors to pay them. The lower court overruled the Commissioner and allowed a refund on these items. It found that under the applicable law, the executors held the money for charities as constructive trustees and because the charities could compel compliance with Mrs. Monks' desires, then she had made charitable gifts deductible under § 812(d).

On August 24, 1940, the Roque Island Gardner Homestead Corporation, a nonstock, membership corporation, was organized under Chapter 50 of the Revised Statutes of Maine, which provided for corporations without capital stock for a variety of purposes, including "for the purpose of preserving and maintaining a family homestead and the rights of descendants and of members of the family therein". The incorporators and original members of this corporation were Mrs. Monks, her two sons, her daughter, George Peabody Gardner, his wife and son, and an attorney related to Mrs. Monks by marriage. On October 31, 1940, Mrs. Monks and George Peabody Gardner sold the Gardner Homestead and its contents, which they owned as tenants in common, to the homestead corporation. According to testimony this property, which had been owned by members of the family almost continuously since 1805, consisted of a number of small islands off the coast of Maine, where modest farming operations were conducted and three buildings were maintained to accommodate the Gardners and their guests, who vacationed there.

Mr. Gardner and Mrs. Monks also transferred to the corporation, at about the same time, a sufficient amount of securities to avoid the operating deficits which the corporation might otherwise suffer if it were forced to maintain the islands solely by the rentals charged to members of the family. The Commissioner ruled that the securities transferred to the corporation by Mrs. Monks, valued at the date of her death at $125,640.06, were includible in her gross estate under §§ 81.18 and 81.20 of Regulations 105 as transfers with possession or enjoyment or power to change the enjoyment retained. This ruling is based on two Articles in the by-laws of the Gardner Homestead Corporation. Article I provides that the corporation shall consist of not more than eight members, selected from the family and serving for life, provided only that no member shall fail on two successive years to pay the annual rental charged by the directors. Article VII sets forth the power to amend the by-laws upon appropriate notice.

The lower court overruled the Commissioner on this point also. On ample evidence it was found that the corporation was intended to be a distinct entity and that it functioned as such. It was found that the corporation had taken over the control and management of the islands completely. It was found that this was not a scheme for tax evasion but a measure motivated by decedent's desire to preserve the homestead for members of the family. The gift of securities was admittedly complete. Thus, the court held that decedent Mrs. Monks' membership in the corporation which she endowed did not give her the benefit of such power over the corporate property that her executors should pay estate taxes on her inter vivos donations to the corporation.

The first point urged on this appeal presents a nice issue of statutory interpretation. Internal Revenue Code § 812(d), 26 U.S.C. § 812(d), provides that there shall be deducted from the value of the gross estate the "amount of all bequests, legacies, devises, or transfers * * * to or for the use of * * *" charities. In this case the decedent has specifically detailed her

wishes concerning the charities to be benefited upon her death by a memorandum and letter written on the same day as the execution of her will. Her executors accorded with her wishes exactly, and the charities have received precisely the amounts indicated by decedent. It is insisted, as the lower court has said, that if any one of the named charities had not received the exact amount intended, then it could compel the executors to pay over such amount, on the theory of a constructive trust. The Commissioner disputes this and says furthermore that even if the executors did have a legal obligation to pay over the money to the charities, it is still not deductible because any such payments would not be made under the terms of the will.

The argument for allowing this charitable deduction was well expressed in the following language in the opinion below: "While it did not pass by a bequest in express terms under the will of Mrs. Monks, it did pass to them from her estate by a transaction which in substance was the same. It was the expressed desire of Mrs. Monks that they should receive it. As a result of her will and of the promise which she had obtained from her executors, the charities had a legally enforceable right to receive the money. Regardless of the legal formulas employed, what Mrs. Monks wanted to do, and what she actually succeeded in doing, was to make a gift at her death of $35,000 from her estate to recognized charities. Her executors should be allowed to deduct that $35,000 as a charitable gift for tax purposes."

The language of § 812(d) is not of very great assistance on this question. A word like "bequest" indicates that deductions should be limited to gifts which pass under the terms of the will, which is the strict construction urged upon us by the Commissioner. However, the section also says " * * * or transfers * * * " and this indicates a very broad applicability.

Turning to the legislative intent, it seems that the general purpose of § 812(d) adds nothing to the indefinite content of its language. A Congressional intention to encourage gifts to charity, see 1 Paul Federal Estate and Gift Tax, § 12.04 (1942 ed.), does not offer much assistance. The theory of a constructive trust in this type of case rests on the testator's omission of a charitable gift in his will, relying on the promise of the constructive trustee. The asserted Congressional intention is not effectuated by putting unjust enrichment cases within the language Congress has employed to benefit charities. Therefore, we must look beyond the statutory language and its purpose to the decisions.

Many of the cases concerning the deductibility of a gift to a recognized charity have turned upon whether or not the gift was of an amount ascertainable at the time of the decedent's death. In Humes v. United States, 1928, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667, it was held that where a gift to charity was contingent on a fifteen year old unmarried girl living until 40, or leaving issue, the gift was not deductible because it was too speculative, that is, due to the contingency the value of the bequest could not be determined from any known data. This precedent cast doubt upon the deductibility of gifts in remainder to charities where trust instruments provided for the invasion of the corpus of the trust and this doubt produced a string of cases recently reviewed in Blodget v. Delaney, 1 Cir., 1953, 201 F.2d 589. Also, the Humes decision governed the disallowance of a deduction in cases like First Trust Co. of St. Paul State Bank v. Reynolds, 8 Cir., 1943, 137 F.2d 518, where the court held that a charitable bequest conditioned on the consent of the decedent's wife was not deductible, although the consent was highly probable.

In Mississippi Valley Trust Co. v. Commissioner of Int. Rev., 8 Cir., 72 F.2d 197, certiorari denied 293 U.S. 604, 55 S.Ct. 119, 79 L.Ed. 695, rehearing denied 1934, 293 U.S. 631, 55 S.Ct. 147, 79 L.Ed. 717, a will contained a provision stating that decedent had expressed to his two sons his wishes concerning charitable gifts and therefore made none under the will but left the matter to the sons' sole discretion. Decedent had expressed a desire that his sons endow St. Louis University and the sons were willing to do so. Despite an order of the local probate court

allowing the gift under the will, it was held that it was not deductible. Although the fatal uncertainty attached to that gift is evident in the particular circumstances, the opinion of the court intimates that the legal enforceability of a decedent's desire is the criterion for determining whether or not there has been a "bequest * * * or transfer."

The United States Court of Appeals for the Seventh Circuit, in Levey v. Smith, 103 F.2d 643, certiorari denied 1939, 308 U.S. 578, 60 S.Ct. 94, 84 L.Ed. 484 held that a gift to a lodge, provided for in a will, was not deductible, but the language of the court indicates that a constructive trust may be deductible because the decision turns upon the failure to establish that the lodge held the gift on a constructive trust for charitable use. A similar case decided by the Second Circuit in the same year, Housman v. Commissioner of Internal Revenue, 2 Cir., 1939, 105 F.2d 973, likewise depended upon the existence of a constructive trust, but the question was whether a payment by a widow to her son was a taxable gift or the performance of a legal obligation.

A more recent decision in the Second Circuit offers a closer analogy than the Levey and Housman cases. In Commissioner of Internal Rev. v. Macaulay's Estate, 2 Cir., 1945, 150 F.2d 847, a case arising under § 812(d) prior to the 1942 enactment of the parenthetical clause in the first sentence, a deduction was allowed for a renounced legacy which passed through a residuary clause providing for charities. The opinion at least indicates that as long as the charitable intention has been expressed in the will and is subsequently effectuated by the will, then § 812(d) applies. That the applicability of § 812(d) is limited to gifts passing by will is suggested by cases holding that local law which incorporates into probate compromised agreements over disputed wills cannot render deductible charitable dispositions agreed upon by disputants rather than made by decedent. Robbins v. Commissioner of Internal Revenue, 1 Cir., 1940, 111 F.2d 828. Cf. In re Sage's Estate, 3 Cir., 1941, 122 F.2d 480, 137 A.L.R. 658, certiorari denied 1942, 314 U.S. 699, 62 S.Ct. 480, 86 L.Ed. 559; Thompson's Estate v. Commissioner of Internal Revenue, 2 Cir., 1941, 123 F.2d 816; Dumont's Estate v. Commissioner of Internal Revenue, 3 Cir., 1945, 150 F.2d 691.

■ If local law cannot operate to transform compromised items into deductible bequests then it would seem that the correct reading of § 812(d) would exclude charitable gifts which owe their existence to the court's willingness to probe the circumstances of a non-charitable bequest. The determinative point in construing "bequests, legacies, devises, or transfers" seems to be that since § 812(d) offers to testators the privilege of deducting certain dispositions beneficial to society, then the policy underlying such a privilege would be best effectuated by requiring a clear and definite exercise of the privilege in the testamentary instrument.

In cases where state statutes limit charitable bequests or legacies, gifts in excess of the allowable amount have been held to be deductible notwithstanding the fact that their effectiveness requires a waiver of statutory rights by the heirs. In Dimock v. Corwin, 2 Cir., 1938, 99 F.2d 799 a deduction for a fund to establish the Folger Shakespeare Memorial Library at Washington was upheld although waiver of statutory rights by the heirs was a condition of the effectiveness of the gift. The same decision has been rendered by the Fifth Circuit, rejecting the argument that the consenting heirs were the ones who made the gift. Commissioner of Internal Revenue v. First Nat. Bank of Atlanta, 5 Cir., 1939, 102 F.2d 129.

■ Thus, the pertinent determinations of the scope of § 812(d) indicate that a charitable deduction should not be disallowed because of a condition attached by operation of law, whereas it may be disallowed, as in Humes v. United States and First Trust Co. of St. Paul State Bank v. Reynolds, supra, when the testator himself makes the charitable gift conditional. No cases bearing more closely on the instant problem have been found. We must select a standard for deductibility somewhere between the certain extremes

that the testator must intend a benefit to charity, Commissioner of Internal Rev. v. Macaulay's Estate, supra; and that a charity must receive the amount deducted. Heim v. Nee, D.C.Mo.1937, 40 F.Supp. 594.

The government's brief states that a deduction is proper only if the terms of the will required the executors to make payments in specific amounts to institutions which fall within the class specified in the statute. However, the only authority cited relates to the government's contentions that the discretion lodged in these executors make these gifts speculative and that it is doubtful whether there really was a constructive trust. Assuming the correctness of the district court's determination that Mrs. Monks' executors were constructive trustees, the gifts did not contain a speculative element. And since we agree with the government's literal reading of § 812(d), we are free to make this assumption. The taxpayers rely principally on the intimations of Levey v. Smith, supra, and Housman v. Collector of Internal Revenue, supra, for the proposition that the deduction should be based on the existence of legal rights accruing to charitable institutions pursuant to the testator's intention.

We think that this proposition is broader than the language of § 812(d) and that it introduces an undesirable uncertainty into charitable deductions. Although the gifts in this case were testamentary in character, we think that the words "bequests, legacies, devises, or transfers", considering the Congressional policy in attaching the deduction privilege to these gifts, make § 812(d) applicable only to those gifts which pass by the terms of a testamentary instrument. Although the four corners of the will may be abandoned to prevent the unjust enrichment of fraudulent executors, there is no justification for

a similar abandonment of the will in effectuating the language and purpose of § 812(d).

By limiting deductions to transfers which pass under express terms of the will, as Congress seems to have done, a clear line is drawn which would be greatly obscured if we placed upon it the frequently vague circumstances and apparently discretionary character of a constructive trust.

Furthermore, any constructive trust which might be imposed by decree of a state court would be delimited by the terms of the oral undertaking of the executors as expressed to their testator. As we read the record in this case, it seems pretty clear that the circumstances existing at the date of the death would not necessarily be controlling. If after the death and before the executors had got around to making distribution, a radical change had occurred in the circumstances of one of the charities, of such a nature that the executors felt the testator, if living, would no longer want the charity to take, it seems that the executors in perfect good faith and consistently with their oral undertaking could withhold such distribution and let the amount fall into the residuary estate. This consideration raises an additional objection to saying that the testator has made a bequest or transfer to or for the use of a charity.

It was error for the district court to hold that the $35,000 was deductible under § 812(d).

Concerning the second item on this appeal, we have more assurance in concluding that the district court was correct in holding that the securities transferred during Mrs. Monks' life to the Gardner Homestead Corporation were not includible in her gross estate.

The government's argument that these securities were includible under 26 U. S.C. § 811(c) (1) (B) [1] and § 811(d)

1. 26 U.S.C. § 811(c) (1) (B) provides "(c) *Transfers in contemplation of, or taking effect at death.*
  "(1) *General rule.* To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate

and full consideration in money or money's worth), by trust or otherwise—
  *    *    *    *    *    *
  "(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end

(1)[2] is reducible to one basic contention that the Gardner Homestead Corporation was a "sham". The decedent participated in the establishment of a non-stock corporation with all the value of her membership interest ceasing at her death and the government says that by virtue of her membership in the corporation she retained possession or enjoyment or the right to designate beneficiaries so that her contribution must be considered as one taking effect at death under § 811(c) (1) (B) or revocable under § 811(d) (1).

The question presented concerns the tax effect of the corporate by-laws on what purports otherwise to be an outright transfer to the corporate donee. It is asserted that since the members of the corporation had the power to amend the by-laws and fill vacancies with new members, and since the decedent was a member, then it should be held that this is a reserved power disapproved in §§ 811(c) and (d) supra.

The premise of this assertion is that this is a proper case for disregarding the separate entity of the Homestead Corporation. Basically the government is disputing the facts found by the court below. It is stated in the government's brief that "* * * there was in fact slight difference between her dominant position * * after the transfer than before and slight chance that there would be any real difference while she lived. One cannot realistically liken the situation now confronting us as the trial court has done to the making of a contribution to capital by a stockholder of an ordinary business corporation. To do so is merely to beg the question * * *."

■ Decedent was only one of eight members who controlled the affairs of the corporation. The district court has found that the decedent did not exercise any influence which could be called dominion over the other members or over the affairs of the Gardner Homestead. The record contains ample evidence to support this finding.

■ Corporate entity is no more sacrosanct in the field of taxation than in other fields of the law. Higgins v. Smith, 1940, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406; Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596; See The Corporate Entity in Tax Cases, 1 Tax Law Review 3 (1945). But disregard of corporate entity is still the exception to the rule. National Carbide Corp. v. Com'r, 1949, 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779; Interstate Transit Lines v. Com'r, 1943, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607; Moline Properties v. Com'r, 1943, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499; Paymer v. Commissioner of Internal Revenue, 2 Cir., 1945, 150 F.2d 334; National Investors Corporation v. Hoey, 2 Cir., 1944, 144 F.2d 466; see A. B. & Container Corporation, 14 TC 842 (1950); Alprosa Watch Corporation, 11 TC 240 (1948).

The separate entity of even one man corporations has been recognized. In Burnet v. Commonwealth Imp. Co., 1932, 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399, it was held that a sale to a sole stockholder resulted in taxable profit to the corporation. See also Klein v. Board of Supervisors, 1930, 282 U.S. 19, 51 S.Ct. 15, 75 L.Ed. 140; Burnet v. Clark, 1932, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397.

before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or * * *."

2. 26 U.S.C. § 811(d) (1) provides:
"(d) Revocable transfers
"(1) Transfers after June 22, 1936. To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona-fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death; * * *."

Also assets received on the liquidation of a one man corporation have been held to be taxable income to the sole stockholder. France Co. v. Commissioner of Internal Revenue, 6 Cir., 1937, 88 F.2d 917. Again, losses sustained by a corporation have been held not properly reported and claimed in the individual tax return of its sole shareholder. Dalton v. Bowers, 1932, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed 389; Menihan v. Commissioner of Internal Revenue, 2 Cir., 1935, 79 F.2d 304. In Webber v. Knox, 8 Cir., 1938, 97 F.2d 921, the court refused to allow a tacking of the periods of possession of property between a taxpayer and his wholly owned corporation for the purpose of computing the holding period under the capital gains provisions.

These cases are qualified by decisions like Higgins v. Smith, supra. There a loss claimed by an individual taxpayer in 1932 on a sale of securities to his wholly owned corporation was disallowed. The transaction was prior to the enactment of § 24(a) (6) of the Revenue Act of 1934 disallowing such losses yet the court ruled that the enactment which had been requested by the Treasury Department was merely confirmatory of existing law. See Commissioner of Internal Revenue v. Smith, 2 Cir., 1943, 136 F.2d 556 and Brown v. Commissioner of Internal Revenue, 2 Cir., 1940, 115 F.2d 337. However, no statutory language compels us to ignore the separate entity of the Gardner Homestead Corporation and the findings of the district court do not warrant our doing so.

In Commissioner of Internal Revenue v. Smith, supra, the tax court found that the corporation was a separate entity but the Second Circuit disagreed saying at page 559 of 136 F.2d that "But we are not persuaded that the Tax Court gave due weight to the later decision of the Supreme Court in Higgins v. Smith * * * and to the clearly unsubstantial character of the taxpayer's wholly owned corporation * * *" In this case we perceive no clearly unsubstantial corporate character and Higgins v. Smith is inapplicable.

An analysis of the cases under §§ 811(c) and (d) which are relied upon by the government reveals that they involved trans-fers where the transferor retained during life some power either to enjoy full possession himself or to prevent another from enjoying full possession. This is the point to be grappled with and the government's generalities about substance and form are meaningful only in this context.

The government takes the business purpose doctrine from the Gregory decision, supra, the family unit concept from cases like Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 and Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, and mixes these ideas with dicta in the cases of Com'r v. Estate of Church, 1949, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288 and Estate of Spiegel v. Com'r, 1949, 335 U.S. 701, 69 S.Ct. 301, 93 L.Ed. 330 in an endeavor to convince us that full possession or enjoyment of the decedent's transfer to the Gardner Homestead was postponed until decedent's death. Yet, as pointed out below, the Corporation had full legal and equitable title. It is sometimes true that taxation may turn upon concepts of ownership which are broader than the legal refinements of title. However, it does not even appear in this case that decedent has retained a substantial economic benefit in the property which is now in the hands of the corporation to be enjoyed by all the members of the Gardner clan. Since it has been found upon credible evidence that decedent did not control the affairs of the corporation, decedent could not alter the enjoyment without the consent of the other seven directors of the corporation.

The decedent did not retain control over the property through her membership in the non-stock corporation, and the transfer was complete and unconditional. Therefore, we agree with the district court that § 811(c) (1) (B) is inapplicable on the analogy from Welch v. Hall, 1 Cir., 1943, 134 F.2d 366 and Hirsh v. United States, 1929, 35 F.2d 982, 68 Ct.Cl. 508. In the Welch case, an agreement was executed between donee of a gift of personal property and decedent during decedent's lifetime which recited that as consideration for the gift donee would sell so much thereof as might be necessary

to meet any deficiency in decedent's estate to pay all taxes. The court held that § 302(c) of the Revenue Act of 1926, the present § 811(c), was inapplicable because the transfer was absolute. In the Hirsh case, the court held that a transfer of securities to children who agreed to pay indefinite annuities was not taxable under the corresponding § 811(c) provision in the Revenue Act of 1918.

As conceded in the government's brief, what has been mentioned above pertains with equal force to the question of whether or not this transfer was revocable. Article VII of the Gardner Homestead Corporation's by-laws merely recognized a power to amend by-laws which exists under the law of Maine. The district court correctly held that this did not operate to make the transfer includible under § 811(d) (1), on the authority of Helvering v. Helmholz, 1935, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76. In that case, the Supreme Court held that an express provision for termination of an irrevocable trust with consent of living beneficiaries did not make the trust includible in the grantor's estate because the power of termination was conferred on the beneficiaries by the applicable law, regardless of any express provision. The reasoning of that decision is contained in Treasury Regulations 105, § 81.20(e) recognizing that inclusion is not proper "if the power adds nothing to the rights of the parties as conferred by the applicable local law." 26 CFR 81.20(e).[3] See also Estate of Lelia E. Coulter, 7 TC 1280, 1290, (1946).

When the taxpayers, in order to contest the includability of the inter vivos transfer in the gross estate, tentatively paid the estate tax due, the government according to its usual practice provisionally refunded the $7,420.77 of gift tax which had been paid on this transfer. It is of course clear that this amount must now be deducted from the taxpayers' prospective refund; for the taxpayers cannot have the inter vivos transfer in its entirety excluded from the gross estate while at the same time retaining the gift tax paid on this transfer which the government tentatively refunded pending the determination of the estate tax controversy. But we do not understand that the parties are in disagreement on this question. The issue actually sought to be raised by the parties relating to the bearing of this $7,420.77 refund on the taxpayers' maximum permissible recovery under § 910 is now moot, since, as we have held, the $35,000 claimed charitable deduction must be disallowed, and thus the taxpayers' ultimate refund will undoubtedly be much less than even the sum of $56,759.94 which the government contends is the maximum that could be refunded under its interpretation of the limiting language of I.R.C. § 910.

The judgment of the District Court is vacated and the case is remanded to that Court for entry of judgment in conformity with this opinion.

WOODBURY, Circuit Judge (dissenting).

The question is close, but nevertheless I feel constrained to disagree with my associates as to the interpretation of § 812 (d) of the Internal Revenue Code.

I am persuaded that under Massachusetts law on the particular facts of this case enforceable constructive trusts for the benefit of each charity named in the memorandum in the amount set opposite the name of each arose at the death of the testatrix, as the court below held and as my associates are willing to concede. In this situation, I would allow a deduction under § 812(d) from the gross estate in the total amount which the charities received.

The section under consideration provides that for the purpose of the tax the value of the net estate shall be determined by deducting from the value of the gross estate the "amount of all bequests, legacies, devises, or transfers * * * to or for

3. 26 CFR 81.20(e) provides: "The provisions of this section do not apply to a transfer if the power may be exercised only with the consent of all parties having an interest, vested or contingent, in the transferred property, and if the power adds nothing to the rights of the parties as conferred by the applicable local law."

the use of" charities such as those listed in the memorandum. If the statute provided only for the deduction of "bequests, legacies, devises * * * to" charities, I would agree with my associates' interpretation, for those words alone imply only the normal situation of a strictly testamentary gift directly to a charity. But the statute also includes "transfers * * * for the use of" charities, and to give these words additional meaning I think they should be construed to cover the transfer of money from an estate to a charity accomplished by the device of a constructive trust imposed by local law on a testamentary disposition because of a testator's reliance upon his legatee's agreement to hold the devise for the benefit of the charity. That is to say, it seems to me that what was in fact accomplished here falls squarely within the definition of transfers to the use of charities, and hence I think that deduction of the amounts which actually passed to the charities is authorized by § 812(d) of the Internal Revenue Code.