### SELIG et al. v. UNITED STATES.
### No. 5736.

District Court, E. D. Pennsylvania.

July 16, 1947.

W. Horace Hepburn, Jr., of Philadelphia, Pa., for plaintiffs.

Rhodes S. Baker, Jr., Sp. Asst. to Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., for defendant.

HALL, District Judge.

The parties have signed a stipulation and supplemental stipulation of facts which makes it unnecessary to repeat them here, except to advert to the proposition that the facts set forth in Paragraphs 5 and 6 of the stipulation and in Paragraphs 2 and 3 of the supplemental stipulation are immaterial and hence are not considered.

The death of the testator Solomon Selig, having occurred on June 13, 1939, which was less than thirty days after the date of his will on May 23, 1939, the charitable bequests involved here are void under P.L. 141, Title 20, § 195, Purdon's Penn. Stats. The plaintiff's contention that they are not void, but merely voidable, or as they put it, not enforceable, is answered to the contrary by the Circuit Court of this Circuit in Dumont's Estate v. Commission-

er of Internal Revenue, 3 Cir., 150 F.2d 691. The agreement of December 16, 1940 (Exhibit E) recognizes by its terms that the bequests are "invalid and unenforceable." And while the agreement of August 2, 1943, does not contain that language, it recites the fact of death of the testator within thirty days of the will. And the mere fact that the parties to the agreement recognized the necessity for any agreement is persuasive of their realization that the bequests were void under Pennsylvania Law.

The bequests being void under the Pennsylvania Law, they would not be deductible so far as the Federal Estate Tax is concerned, unless compliance was had with Section 812(d) of the Internal Revenue Code as amended in 1942. Three things are necessary for compliance with that Section: death must have occurred after February 10, 1939; there must be an irrevocable disclaimer; and the irrevocable disclaimer must be made before the date prescribed for the filing of the estate tax return. There was compliance with the first condition in that death occurred on June 13, 1939 (cases hold that this condition is not a necessary prerequisite to exemption on the ground that the 1942 amendment was but a declaration of existing law, Commissioner v. Macaulay's Estate, 2 'Cir., 1945; 150 F.2d 847, at page 849).

But there has been no compliance with either of the other prerequisites, in that the agreements upon which the plaintiffs rely are neither "irrevocable disclaimers," nor were either of them made "prior to the date prescribed for the filing of the estate tax return."

It was conceded at the argument that the estate tax return was due within fifteen months of the date of death. It was filed September 12, 1940, two days prior to the expiration of the fifteen month period. The first agreement upon which plaintiffs rely was made December 16, 1940, more than three months after the time prescribed by the 1942 Amendment; and the second agreement upon which the parties rely was made on August 2, 1943, almost three years after the time prescribed by the 1942 Amendment. Assuming the agreements to be "irrevocable disclaimers," they were thus not made in time to comply with the 1942 Amendment.

It is alleged in the complaint that, after the death of decedent and prior to the filing of the return, the parties orally agreed to the things set forth in the agreements of December 16, 1940, and August 2, 1943. This is denied by the answer for lack of information and belief, and is not covered by the stipulation. No evidence on this asserted oral agreement was offered or introduced at the trial. No fact is before the court as to the time of the agreement, the place it was made, the persons present, or what was said. In view of which, and in view of the failure of the defendant to admit or stipulate to such oral agreement, I must and do conclude that no such oral agreement was made within the time required by the 1942 Amendment.

But the agreements do not meet the test of being "irrevocable disclaimers." Under the agreements the entire corpus of the trust can be used, or consumed by the widow of the deceased, so that upon her death there would be no remainder from which to pay any of the bequests. The parties to the agreements not only did not disclaim this power to divert or use the entire corpus of the trust, but specifically affirmed it, by reciting in the agreement of August 2, 1943 (Ehibit F), that the widow "is possessed of a power to consume the assets of this estate in accordance with the terms of decedent's will." By virtue of this power of consumption there was no certainty under the will that the gifts would ever vest in the charities mentioned, and the agreements did nothing to clarify this uncertainty, but on the contrary affirmed the uncertainty by affirming the power to consume the entire corpus of the estate. It is significant that the total date-of-death value of the bequests was agreed by the parties to this action to be $31,908.73 (Par. 4 of Stipulation of Facts), but that in the agreements relied upon by the plaintiffs, no sum is set aside whatsoever to which the parties attempted to make any disclaimer.

Moreover the agreements by their terms are not "disclaimers." They are agreements among the parties to see that certain

charities get certain sums, if any money is left upon the occurrence of the death of the various persons involved. Any sum which the charities may receive will not be received under the provisions of the will but because of the charitable desires of the legatees and the widow of the deceased.

The contentions of the plaintiff in respect to the effect of the agreements come within the rule laid down by the Second Circuit in Commissioner v. Macaulay's Estate, 1945, 150 F.2d 847, at pages 848, 851, where the Court said: "It is well settled that where a third party has a power to divert gifts from charitable to non-charitable objects the gifts are not deductible even though the power of diversion shall never be exercised."

Dumont's Estate v. Commissioner of Internal Revenue, 3 Cir., 1945, 150 F.2d 691, relied upon by the plaintiffs, is distinguishable on its facts as to this point in that the charitable beneficiary there instituted a contest of the decedent's will on the ground of lack of testamentary capacity. If they had succeeded in their contest, a former will would have been validated under which they would have been lawful beneficiaries. The effect of the agreement withdrawing the contest, was actually to give the charitable beneficiary specific sums, and specific income, as well as remainders after life estates. Such is not the case here. Furthermore, under the agreement in the case at bar the charitable beneficiaries receive nothing, and may never receive anything.

Judgment will be for the defendant, who will prepare, serve and submit findings and judgment within five days.

### Findings of Fact.

1. Plaintiffs who are residents of the City and County of Philadelphia, Pennsylvania, brought this action as the duly qualified and action executors of the estate of Solomon Selig, deceased, hereinafter called testator. The defendant is the United States of America.

2. By their complaint herein filed, plaintiffs sought to recover from the defendant the sum of $5,537.95, with interest, as an alleged overpayment of federal estate tax which was assessed and collected upon the transfer of the net estate of the testator.

3. The question involved is whether the testator's estate is entitled to deductions, under Sec. 812(d) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 812(d), for the amounts representing the date of death values of certain charitable bequests contained in the residuary clause of testator's will, a portion of which bequests were by the terms of the will to be effective after the death of testator's widow, who was a life tenant, and the balance of which bequests were by the terms of the will to be effective after the deaths of three other life tenants.

4. Testator died on June 13, 1939, a resident of Philadelphia County, Pennsylvania, having executed his last will and testament on May 23, 1939, less than thirty days before his death. By Pennsylvania statute, 20 P.S. § 195, charitable bequests contained in the will of a testator executed less than thirty days before death are void and go to the residuary legatees, heirs or next of kin, according to law.

5. The will specifically revoked all prior wills and was duly admitted to probate in the office of the Register of Wills of Philadelphia County, Pennsylvania. It appointed plaintiffs executors thereof and trustees of testator's residuary estate.

6. Under the terms of the will testator provided for certain specific bequests and devised the remainder in trust with directions to the trustees to pay out of the income of the estate $100 per month to his brother, Siegfried Selig, during the life of Bella Loeb Selig, testator's widow, and to pay the balance of the income to Bella Loeb Selig for life.

7. Testator's widow had the power to consume the assets of his estate. Testator by his will directed his trustees, one of whom was his widow, to invade the corpus of his estate for the benefit of the widow under the following circumstances:

"In the event that the income from my residuary estate shall prove insufficient to keep and maintain my wife in substantially the same manner in which she has been accustomed to live, I direct my Trustees to pay out of the principal of my residuary·

estate quarterly or half-yearly such sum as will in the judgment of my said Trustees and my wife be deemed essential to be paid to her for her support and maintenance."

8. At the time of the testator's death the annual income of his estate was inadequate to the extent of approximately $7,500 a year to keep and maintain Bella Loeb Selig in the manner in which she had been accustomed to live at and prior to testator's death. When testator provided for invasion of the corpus of his estate he knew the amount of income earned by the estate and the amount required to maintain his widow in the manner she had been accustomed to live.

9. The will further provided that upon the death of Bella Loeb Selig $5,000 was to go to each of two named charities and the remainder was to be divided into two equal shares or parts. One of the parts was devised to certain next of kin of the testator. The other part was divided into six equal sub-parts, four of which were devised to relatives of testator's wife. The other two sub-parts were to be retained in the residuary estate during the lives of three designated life tenants, during which time the income from said sub-parts was to be paid to the life tenants and, at their deaths, the principal of said sub-parts was directed to be paid over and devised to certain designated charitable organizations.

10. At the time the testator died he was survived by his widow as well as the three other life tenants mentioned in his will, all of whom are presently living. Testator was also survived by all but one of the residuary legatees.

11. Under the terms of the will, the right of the private residuary legatees (as distinguished from the charitable legatees) to take was contingent upon their surviving the testator's widow. If a private residuary legatee predeceased the widow, his child or children surviving would receive his share. If both the private residuary legatee and his child or children predeceased the widow, leaving issue surviving, the surviving issue took pro rata the share that his or their deceased parent would have taken if living.

12. At the present time there are eighteen children of the residuary legatees. Four of them are minors. There are at the present time approximately nineteen grandchildren of the residuary legatees. Fifteen of them are minors. There are at the present time nine of the testator's next of kin, one of whom is a minor.

13. Testator's estate was called for audit in the Orphans' Court of Philadelphia County on April 1, 1940. The audit was confirmed by order dated April 5, 1940, the pertinent portion of which provided as follows:

"By the terms of said will, testator gave the residue of his estate to the accountants, in trust, to pay out of the net income derived therefrom $100.00 monthly to his brother, Siegfried Selig, for the life of his wife, Bella Loeb Selig, free of tax, and the remainder of the net income derived from his residuary estate (Including the income given to his brother, Siegfried Selig, upon his death should he predecease testator's wife) in equal quarterly or half-yearly payments to his said wife, for life; with the provision that in the event that the income shall prove insufficient to keep and maintain his wife in substantially the same manner in which she has been accustomed to live, he directed his trustees to pay out of the principal of his residuary estate quarterly or half-yearly such sum as will in the judgment of his said trustees and his wife be deemed essential to be paid to her for her support and maintenance; with remainder after the death of his said wife not now necessary to recite as she is living."

14. On September 12, 1940 plaintiffs filed a federal estate tax return. In Schedule N thereof a total of $10,000 was claimed as a deduction on account of the two specific $5,000 charitable bequests but no deduction was claimed for the value of the other charitable bequests in remainder provided in the will. The tax liability disclosed in the return was paid on September 12, 1940. Upon audit of the return, the Commissioner of Internal Revenue determined a deficiency tax in the sum of $4,845.92, which deficiency was based on certain adjustments which plaintiffs conceded were correct, as well as on the disallowance

of the deduction for the charitable bequests which plaintiffs claimed under Schedule N. The deficiency tax, together with interest, a total of $5,150.21, was paid on September 30, 1941. Based on calculations which did not take into account the possibility of invasion of the corpus of testator's estate or any other contingencies, the date of death value of the two $5,000 bequests was shown to be $6,467.13, with a federal estate tax attributable thereto of $1,042.13, and the date of death value of the other charitable bequests was shown to be $25,441.60, with a federal estate tax attributable thereto of $4,098.95.

15. Realizing that under Pennsylvania law the charitable bequests in testator's will were invalid and unenforceable, but desiring to carry out the testator's wishes that the two $5,000 bequests be paid, certain of the testator's residuary legatees and contingent residuary legatees who were then of legal age executed an instrument dated December 16, 1940, by which they agreed "in consideration of their mutual promises" that at the death of Bella Loeb Selig the trustees pay out of their shares of the estate and the charitable legacies the sum of $5,000 to each of the two named charities. The instrument further provided:

"In the event that any of the parties hereto shall not survive Bella Loeb Selig, they hereby declare that it is their desire that the parties who shall take their shares as provided for in the Will shall join in this agreement and contribute their pro rata shares in order to carry out the decedent's desires. The parties hereto realize that this provision is not obligatory on the possible beneficiaries who are not parties to this agreement, but are nevertheless expressing their wishes, confident that such parties will comply therewith."

16. On October 20, 1942, plaintiffs filed claim for refund of $5,537.95, presenting as grounds therefor the following:

"That under the Will of Solomon Selig, certain bequests were made for certain charitable uses and purposes in remainder. That the validity of these bequests could not be determined until after the death of the life-tenant by the Orphans' Court of Philadelphia County. The Field Agent in Charge assessed against the Executors of the Estate a deficiency of $4,845.92 together with interest of $304.29 without any determination of the Court as to the validity of the bequests to charity, which deficiency was paid September 30, 1941. The petitioners believe and are informed that no question will be raised as regards the validity of these bequests by any of the next of kin of Solomon Selig or the heirs or devisees under the will. That the amount of over-assessment, in event of these bequests being declared valid by the Court, is $5,537.95. Wherefore your petitioners claim a refund in the above amount, plus interest."

17. Realizing that the charitable bequests in testator's will were void under Pennsylvania law, but desiring to carry out the testator's wishes that all of the charitable bequests be paid (a portion of which had been omitted from the instrument executed on December 16, 1940), the testator's residuary legatees, contingent residuary legatees and next of kin who were of legal age on August 2, 1943, executed on that date an instrument by which they provided, in part, as follows:

"Whereas the said parties are desirous of entering into a valid and binding agreement to confirm the family agreement between the parties so that no question will be raised as regards the legality or illegality of the aforementioned devises to charities; and

"Whereas Bella Loeb Selig, widow of Solomon Selig has elected to take under and not against the Will and is possessed of a power to consume the assets of this estate in accordance with the terms of decedent's Will; and

"Whereas by error, inadvertence and mistake in the previous written agreement there was omitted the two funds in remainder payable to the said charities above mentioned;"

The instrument provided that at the death of Bella Loeb Selig, the trustees of testator's estate should pay the sum of $5,000 to each of the two named charities and that at the deaths of the three other life tenants, the trustees of testator's estate should pay two-sixths of one-half of the residuary estate to two named charities in

accordance with the terms of the will. The instrument further provided as follows:

"4. We and each of us do hereby agree to and with each other to be bound by the terms of this agreement and hereby waive our respective rights to said funds and any and all share in said charitable bequests and any right we may now have or hereafter have to receive any portion of said funds heretofore devised to the said charities, on account of any illegality thereof. We further agree that the failure of any of the parties above mentioned to sign this agreement shall not relieve any of those signing this agreement from their obligation to turn over to the charities his or her share in said funds and we the undersigned do further assign, set-over and transfer unto the said charities each of our proportionate shares in said charitable bequests. We further agree that any award of any court resulting in the charitable bequests being declared invalid or inoperative, be forthwith transferred and assigned to said charity, it being our intent and purpose to ratify, republish and confirm the verbal understanding to and with each other agreeing to validate as far as possible the said charitable bequests. The parties to this agreement are cognizant and know that certain of the beneficiaries who are not parties to the agreement may not sign said agreement, but that said agreement shall remain open for the signature of any persons should they be either legatee, devisee or next of kin of Solomon Selig, deceased."

18. The instrument dated August 2, 1943, is presently among the papers relating to testator's estate in the Orphans' Court of Philadelphia County, Pennsylvania, but the instrument bears no file mark of the Orphans' Court and no reference thereto is contained in the official records of that Court. Neither the instrument dated December 16, 1940, or the instrument dated August 2, 1943, was in existence when the adjudication of the Orphans' Court was made on April 5, 1940, and formed no part of the adjudication.

19. On February 12, 1945, the Commissioner of Internal Revenue notified plaintiffs by registered mail that their claim for refund was rejected in its entirety, assigning as grounds therefor the following:

"An examination of the record discloses the fact that the decedent was a resident of Pennsylvania and that his will was executed less than thirty days prior to his death. Under Pennsylvania law a charitable bequest made less than thirty days prior to the testator's death is void. There appears to be no valid residuary bequest into which the void bequest can fall and therefore no charitable deductions are allowable in respect to the bequests in question."

20. This suit was filed on March 22, 1946.

### Conclusions of Law.

1. This court has jurisdiction of the parties and the subject matter.

2. The date of death value, if any, of the charitable bequests was too uncertain and indefinite to permit any deduction therefor.

3. The charitable bequests were void under state law, not merely voidable.

4. The instruments executed by certain of the private beneficiaries on December 16, 1940, and August 2, 1943, did not constitute "irrevocable disclaimers" within the meaning of Section 812(d) of the Internal Revenue Code.

5. Any property or amounts which the charities may ultimately receive will be received as gifts from the private beneficiaries, not under the will of the testator.

6. Since at the testator's death the gifts intended for the charitable beneficiaries were void, the property vested instead in the private beneficiaries who were thereby empowered to divert the gifts from charitable to non-charitable purposes or objects. Therefore, the gifts are not deductible even though this power of diversion may never be exercised.

7. The charitable beneficiaries did not receive anything of value under the instruments, nor is there any certainty or assurance that they ever will.

8. The tax sought to be recovered by plaintiffs was properly assessed and collected.

9. The defendant is entitled to judgment dismissing plaintiffs' complaint with prejudice, together with costs of suit.