Estate of Mary E. Morris, Jr., Hazel J. Doyle, Executrix v. Commissioner.
Estate of Morris v. Commissioner
Docket No. 1615-64.
United States Tax Court
T.C. Memo 1966-191; 1966 Tax Ct. Memo LEXIS 92; 25 T.C.M. (CCH) 974; T.C.M. (RIA) 66191; August 30, 1966
Edward S. Bentley, for the petitioner. Robert D. Whoriskey, for the respondent. SCOTT
Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioner's estate tax in the amount of $105,024.04. The issues for decision are: (1) Whether in determining the charitable deduction for amounts passing to residuary charitable legatees the preresiduary devise to an individual should be limited to the amount fixed by a settlement agreement made during the course of certain litigation or should be a greater amount resulting from the addition of one-fourth of the decedent's gross estate which the individual claimed was devised to her by a holographic codicil and $100,000 *94 which was the amount stated by a prior codicil as the devise to the same individual. (2) What is the proper amount of attorneys' fees deductible as administration expenses in arriving at the value of the estate subject to tax? This issue is dependent on (a) a determination of what is a reasonable attorneys' fee for the services rendered by attorneys for the benefit of the estate, (b) whether all or a portion of the attorneys' fees agreed to be paid out of the residuary estate in a settlement agreement during the course of litigation were properly expenses of the estate or were in whole or in part for the benefit of the devisees and (c) whether the attorneys' fees otherwise deductible should be reduced by amounts claimed as deductions by the estate on income tax returns to which were attached waivers by the executor of all right to have such items allowed at any time as deductions from the gross estate. (3) Whether the portion, if any, of attorneys' fees paid out of the residuary estate which is not allowed as a deduction from the gross estate in determining the net taxable estate should be used to reduce the amount of the residuary estate to be allowed as a charitable deduction. *95 Findings of Fact Some of the facts have been stipulated and are found accordingly. Hazel J. Doyle (hereinafter referred to as Doyle), whose address is New York City, New York, is executrix of the estate of Mary E. Morris, Jr. References to petitioner herein will refer to the Estate of Mary E. Morris, Jr., Hazel J. Doyle, Executrix. Mary E. Morris, Jr., hereinafter referred to as decedent, died on July 10, 1959, at Beverly Hills, California. At the date of her death her domicile was Westport, Connecticut. On November 10, 1955, decedent executed a will which, after providing for payment of her debts and funeral expenses, made a bequest of $1,000 to Estherina Macready, a cousin of decedent, a bequest of certain jewelry to Doyle, and a bequest of $50,000 to Doyle "in appreciation of her faithful services to me for many years." The remainder of decedent's estate she bequeathed to her brother, John B. Morris, Jr., with the provision that in the event he should predecease her, the residue of her estate was bequeathed to six specifically named charitable institutions to which bequests constitute a charitable deduction in the computation of the net taxable estate of decedent. This will *96 provided that any and all inheritance, succession, transfer, legacy or estate taxes should be paid out of the residuary estate and appointed Robert W. Owens, Jr., an attorney of New York City as executor. On July 19, 1957, decedent executed a "First Codicil" to her will dated November 10, 1955. In this codicil she eliminated the clause in her will bequeathing $50,000 to Doyle and substituted in lieu thereof a bequest of the sum of $100,000 to Doyle "in appreciation of her faithful services to me for many years" and added a clause making a bequest of $50,000 to William A. Morgan, a doctor of Westport, Connecticut "in appreciation of the faithful and efficient services which he rendered to my late brother, John B. Morris, Jr." On November 8, 1958, decedent executed a "Second Codicil" to her will dated November 10, 1955, in which she provided for the establishment of a trust in the sum of $45,000, the income of which was to be paid to David Sapko during his life or until he attained the age of 22 years, whichever event first occurred, with the principal of the trust fund to be paid upon the death of David Sapko or his attaining the age of 22 years to Marietta College of Marietta, *97 Ohio, a charitable institution. Robert W. Owens, Jr. of New York City, New York, was named trustee of this trust. Under date of December 2, 1958, decedent executed a holographic codicil as follows: This is my last Will I dispose of my property as follows One fourth of all of my estate shall go to Hazel J. Doyle. The balance of my estate shall be disposed of as in the former will I have made. All taxes are to be paid by said estate & not charged against the beneficiary named herin [herein]. I name Hazel J. Doyle my executrix. MARY E. MORRIS JR. December 2, 1958 Decedent's will dated November 10, 1955, and the First and Second Codicils thereto had been prepared by decedent's attorney, Robert W. Owens, Jr. of New York City (hereinafter referred to as Owens) and were in Owens' possession in New York City at the date of decedent's death. The holographic codicil had been written by decedent in California and was in the possession of a California attorney at the date of her death. Doyle, the individual referred to in the will, the first codicil and the holographic codicil was a nurse who had been decedent's companion for many years prior to her death. David Sapko, the *98 income beneficiary of the trust in the second codicil, was born on December 20, 1943, and attained the age of 22 years on December 20, 1965. The value of the charitable remainder of the trust of $45,000 provided for in the second codicil on the alternate valuation date was $35,963.68. In September 1959, Owens having possession of the will and the first and second codicil and having no knowledge that decedent had executed any later testamentary instruments, filed the will and first and second codicil with the Probate Court for the District of Westport, Connecticut (hereinafter referred to as the Probate Court), together with an application for the probate thereof as the last will and testament of decedent. On September 10, 1959, the Probate Court granted Owens' application and admitted to probate the will and first and second codicils as the last will and testament of decedent and appointed Owens as executor of her estate. On April 10, 1961, (having previously obtained an extension of time) Owens filed with the district director of internal revenue at Hartford, Connecticut, an estate tax return for decedent's estate, wherein an election was made to use the alternative method of *99 valuation permitted by section 2032 of the Internal Revenue Code of 1954. The total gross estate on the basis of "alternative value" was shown as $728,078.13. Among the deductions claimed on the return was an estimated amount of attorneys' fees of $30,000. On September 28, 1959, Doyle by John L. Calvocoressi, her attorney, filed with the Probate Court an application to revoke the decree admitting the will of November 10, 1955, with the first and second codicils thereto to probate and appointing Owens as executor on the ground that decedent was domiciled in California at the time of her death and that the Westport, Connecticut, Probate Court had no jurisdiction to probate her will, and that representations made in the petition for probate to the effect that decedent was domiciled in Westport, Connecticut, were false and fraudulent. On November 20, 1959, the Probate Court denied the application to revoke its Order. On December 15, 1959, Doyle filed with the Probate Court an application to admit the holographic codicil to probate as a third codicil and to revoke the letters testamentary granted to Owens as executor, and issue letters testamentary to her as *100 executrix. On March 18, 1960, Doyle by John L. Calvocoressi, her attorney, filed an amended petition with the Probate Court asking that the holographic codicil be admitted to probate as the last will and testament of the decedent. On May 9, 1960, the Probate Court made an order to the effect that the application to probate the holographic paper as a codicil should be considered withdrawn, as petitioner had elected to proceed on her application to probate the instrument as a will. On April 29, 1960, Owens applied to the Probate Court to dismiss Doyle's petition on the ground, among other things, that the probate order of September 10, 1959, was res judicata and that no sufficient grounds were presented to revoke that order. On June 3, 1960, the Probate Court denied the application to dismiss. Owens appealed to the Superior Court of Connecticut from that order of the Probate Court and on October 17, 1961, the Superior Court erased the appeal. Thereafter Owens appealed to the Supreme Court of Errors of the State of Connecticut from the order of the Superior Court and on December 7, 1961, the Supreme Court of Errors erased the appeal. On May 1, 1962, the Probate Court granted the *101 application of Doyle to admit the holographic instrument as the last will and testament of decedent, vacated the appointment of Owens as executor and appointed Doyle as executrix in Owens' place and directed Owens to transfer and deliver to Doyle as executrix all of the property and assets of the estate in his possession or under his control. On May 23, 1962, Owens appealed to the Superior Court of Connecticut from the order of May 1, 1962, of the Probate Court. On April 2, 1963, that appeal was heard before the Superior Court and on July 26, 1963, the Superior Court dismissed the appeal from the order of the Probate Court. The "Memorandum Decision" of the Superior Court stated that a will such as the holographic instrument admitted to probate as decedent's last will "if executed in Connecticut would not be admissible" but that under Connecticut statutes "any will executed according to the laws of the state or country where it was executed may be admitted to probate in Connecticut and be effectual to pass any estate of the testator situated" in Connecticut, that the holographic instrument was executed in California in accordance with the laws of that state, that the testator had *102 testamentary capacity and that no undue influence had been proved or waiver, laches or estoppel upon the part of Doyle, or anyone else established. The Superior Court in its consideration of Owens' appeal from the order of the Probate Court permitting the holographic instrument to be probated as decedent's last will made findings numbered 1 to 85, inclusive, which set forth in detail the proceedings which had taken place with respect to the probate of decedent's will and the circumstances under which the holographic instrument was written. These findings included the following facts: On or about July 19, 1957, decedent told Doyle of her bequest to her of $100,000. Decedent had previously told Doyle that she was leaving certain jewelry to her. Thereafter decedent desired to make a still more generous testamentary disposition in favor of Doyle, but in this Robert W. Owens, Jr., refused to assist her, alleging that it was impossible. A day or two before December 2, 1958, Doyle had a 40-minute talk on the telephone with a Los Angeles attorney to whom she had been referred by a friend. She told the attorney of her having been employed by decedent for many years and that decedent desired *103 to leave her a portion of her estate. After some discussion the attorney told Doyle that the decedent could make a holographic codicil and if she wanted to she could refer to the prior will. Doyle asked the attorney what a holographic codicil meant and the attorney explained that it had to be in the decedent's own handwriting, dated and signed, and that it must be on a blank sheet of paper with nothing else written on it. The attorney suggested that decedent call him. Doyle relayed to decedent the information she had received from the attorney. On December 2, 1958, Doyle called the attorney and said that decedent was there and would like to talk with him and the attorney had a short conversation with decedent telling her that she could write the codicil to the will in her own handwriting. Decedent wrote the holographic instrument in the presence of Doyle on paper furnished to her by Doyle and read it to the attorney who said it sounded all right. Decedent was unacquainted with this attorney until she talked with him on the telephone and she never saw him. Decedent told the attorney she would send the paper to him and did mail a letter dated December 2, 1958, to the attorney enclosing *104 the holographic instrument. This letter which was received by the attorney on December 3, 1958, stated in the body, "As per my telephone instructions, please keep the inclosed in your deposit box." Doyle did not inform the California attorney of decedent's death and he first learned of it on or about October 28, 1959, through certain California attorneys for Doyle. On October 28, 1959, the California attorney filed the holographic instrument with the County Clerk of Los Angeles County, California. Doyle was ignorant of the proceedings of decedent's estate, or of the court in which held, until September 1959, when she was referred to local counsel. After Doyle filed her application to dismiss the proceedings on jurisdictional grounds, Owens offered to turn over to her the rings of decedent and the legacy of $100,000 provided for under the terms of the First Codicil. Owens and Doyle agreed that Doyle should receive $3,600 severance pay. Later Owens did make the $3,600 payment to Doyle and she accepted this. Doyle did not at any time inform Owens of the holographic paper of December 2, 1958, and did not show him the carbon copy of it which she had retained in her possession. Decedent *105 was a woman of unusual physical force and vitality. She was mentally alert. She was a person of strong will. She was periodically informed by Owens of her financial condition. With the exception of her brother, who predeceased her by some two years, decedent had minimal contacts with her next of kin, numerous first and second cousins, and showed no disposition in her testamentary documents to benefit them, except for a gift of $1,000 to Estherina McCready. Owens appealed to the Supreme Court of Errors of the State of Connecticut from the order of July 26, 1963, of the Superior Court and on December 2, 1964, the Supreme Court of Errors remitted the matter to the Superior Court with instructions to treat the holographic instrument as a codicil and not as decedent's last will. The opinion of the Supreme Court of Errors reported under the designation, Robert W. Owens, Jr. v. Hazel J. Doyle, 152 Conn. 199, 205 Atl. 2d 495, stated in part as follows: The decree of the Probate Court dated May 1, 1962, was erroneous (1) in that it referred to the third codicil as a will; (2) in that it should have admitted to probate the third codicil dated December 2, 1958, as a codicil *106 rather than as a will; and (3) in that it should have revoked only so much of the order and decree of September 10, 1959, as was inconsistent with the third codicil. * * * Since the Superior Court, in its judgment, dismissed the appeal from probate, it in effect affirmed the judgment of the Probate Court, and this judgment in turn was erroneous in the respects heretofore pointed out. This opinion concluded by stating "There is error in the form of the judgment, it is set aside and the case is remanded for the rendition of a judgment corrected to conform to this opinion." On March 26, 1965, the Superior Court entered its order correcting its judgment in accordance with the remand from the Supreme Court of Errors. After the entry of the order of March 26, 1965, by the Superior Court there continued to exist certain controversies between the parties which had not been adjudicated in the course of the litigation which had transpired. In order to settle and adjust these controversies and any other controversies then existing or which might arise between the parties, the attorneys for the parties entered into negotiations of settlement. As a result of these negotiations a stipulation *107 of settlement was entered into between the parties in July 1965. At the date of trial of this case the Probate Court had been informed of the stipulation of agreement but had taken no action in relation to the stipulation and agreement pending the final accounting of Doyle as executrix, which at that date had not been filed. Under date of March 8, 1966, shortly prior to the trial of this case, Doyle's attorney submitted to the Judge of the Probate Court a corrected inventory and a "Succession Tax Return of the State of Connecticut, Form E-15", which the attorney stated represented with respect to fees and such matters "the agreement which we hammered out in the summer and we discussed in part with your honor." The letter transmitting the corrected inventory and Succession Tax Return to the Judge of the Probate Court stated that copies of these documents had gone forward to the State Tax Department. The stipulation and agreement which was entered into in July 1965 recited that certain disputes had arisen between the parties which resulted in extended litigation in the Courts of the State of Connecticut, that Owens had filed certain accounts in the Probate Court and that Doyle *108 was about to file in the Probate Court her account as executrix of decedent's estate and that (4) Certain further disagreements have now arisen in respect to the following matters, among others: (a) Whether the gift to Doyle under the holographic codicil is accumulative or substitutional to the legacy of $100,000 under the will and first codicil; (b) Computation of the amount of the estate in which Doyle is entitled to participate under the holographic codicil; (c) Amount and allocation of the attorneys' fees and disbursements of Owens as executor and of Doyle as executrix; (d) Apportionment of federal estate taxes and Connecticut succession tax. (5) The parties wish to avoid further expense and litigation and to procure a prompt completion of the administration and distribution of the estate. The agreement provided that administration expenses and estate and succession taxes would be paid out of the residuary estate and that Doyle and her attorney would promptly complete the administration of the estate, including the determination of the Federal estate tax and Connecticut succession tax due from the estate and procure any refund of such estate taxes and income taxes *109 to which the estate may be entitled. It contained the following provisions with respect to other disposition of the estate: (6) Doyle as executrix will promptly pay to Bentley & Owens, out of the assets of the estate, the sum of $2,269.05 for fees and disbursements incurred prior to the decedent's death, * * * (7) The executors' fees shall, subject to the approval of the Probate Court, be $15,000 of which $7500 shall be payable to Doyle and $7500 to Owens. (8) Subject to the approval of the Probate Court, Doyle shall pay counsel fees to the attorneys representing Owens and charities in the amount of $55,000 plus disbursements, less sums already paid, to be divided according to written notice to Doyle, and counsel fees to the attorneys representing Doyle in the amount of $70,000 plus disbursements, less sums already paid. Such fees shall include all services to complete administration, but not including further litigation. The settlement of the tax court case now pending is not deemed "further litigation." (9) The interest of Doyle in the estate is determined to be $196,100 made up as follows: Share of estate pursuant to the
holographic codicil
$185,000
Severance pay as shown in
Owens' account
3,600
Commissions as executrix as
agreed in this stipulation
7,500
Total
$196,100
of which the following sums
have heretofore been paid: Severance pay
$ 3,600
On account of legacy
50,000
On account of legacy
50,000
On account of
commissions
5,000
108,600
Leaving a balance of
$ 87,500
*110 (10) Doyle has renounced all claim in and to the legacy of $100,000 provided in the will and first codicil, and she will, upon demand, execute and deliver a formal instrument of renunciation. (11) Doyle as executrix will promptly pay to herself the said sum of $87,500, and distribute to the charities the balance remaining in her hands as executrix after making the payments provided for in said accounts and in this agreement, and after retaining a reasonable reserve for contingencies. (12) Doyle by her attorneys, and in cooperation with the attorneys for the charities, will take such steps as may be necessary to determine the federal estate tax and Connecticut succession tax due from said estate, and to obtain any refund of estate taxes and income taxes to which the estate may be entitled. (13) Any gains or losses in the liquidation of the assets of the estate shall be for the account of the charities. (14) Any refund of estate tax, succession tax and/or income tax shall be for the account of the charities, it being understood that the charities are entitled to income during administration. Fiduciary income tax returns for the Estate of Mary E. Morris, Jr., for the calendar *111 years 1962, 1963, and 1964 were filed by Doyle as executrix. The return for 1962 reported total income of $24,067.90, consisting of dividends, interest, and net gain from sale or exchange of capital assets. The return for the year 1963 reported total income of $42,327.39 composed of the same items as in 1962, and the return for 1964 reported total income of $19,893.33 composed of dividends and interest. Deductions (exclusive of the long-term capital gain deduction and dividend exclusion and exemption) in the amounts of $10,457.22, $12,728.15, and $13,223.30 were claimed on the returns for the years 1962, 1963, and 1964 respectively. These deductions in each of the years consisted primarily of payments of a type that were administrative expenses of the estate including attorneys' fees paid to Pelgrift, Dodd, and Stoughton in the amount of $5,000, $10,000, and $10,000 for the years 1962, 1963, and 1964, respectively. With the fiduciary income tax return (Form 1041) for each of the years 1962, 1963, and 1964 a waiver signed by Doyle as executrix was filed stating that the amounts of deductions claimed including the attorneys' fees were allowable under section 2053(a)(2), had not been *112 allowed as deduction from the gross estate, and "all right to have such items allowed at any time are hereby waived." Attorneys' fees of $70,000 to Doyle's attorneys and $55,000 for attorneys for Owens and the charitable residuary legatees were reasonable in amount for the work performed by the attorneys, both in connection with the ordinary problems arising in the handling of the estate and its administration and the problems arising during the course of litigation with respect to the validity and probation of the holographic instrument as a will or codicil to decedent's will. Reasonable attorneys' fees allowable under the laws of Connecticut for administration of an estate of the size and consisting of the property included in decedent's estate in the absence of any adversary litigation with respect to the will to be probated or the proper interpretation of such will would be $30,000. Respondent in his notice of deficiency determined the value of the gross estate to be $732,134.91 and the taxable estate to be $542,560.06. In making this determination, respondent disallowed the deduction of $30,000 for attorneys' fees claimed on the estate tax return as filed with the explanation *113 that the adjustment was being made "pending a determination of a proper fee for attorney's services." Respondent reduced the deduction for charitable gifts and bequests from the amount of $414,292.50 as claimed on the estate tax return to $53,578.81, the amount of the residual charitable gifts being reduced from $377,684.95 to $17,615.13 with the explanation that the "foregoing adjustments reflect the minimum amounts to which the named beneficiaries will become entitled under the terms of the testator's will." In the pleadings as finally amended petitioner takes the position that attorneys' fees in the amount of $125,000 are properly deductible from the gross estate in determining the net estate, and in the alternative that if such amount is not deductible from the gross estate, then in computing the charitable deduction such amount should not be deducted from the residuary estate bequeathed to the charities. Petitioner further takes the position that in determining the amount of the residuary estate which is properly deductible as a charitable gift or bequest the gross estate should be reduced for the specific bequest to Doyle only by the $185,000 provided in the agreement plus *114 the $611 value of jewelry, and not by $183,033.73 plus the $611 value of jewelry plus the $100,000 specific bequest provided in the first codicil to the will as determined by respondent. Opinion The parties are now in agreement as to the valuation of the gross estate at $732,134.91, so that their disagreement as to the amount of the residuary estate which was bequeathed to certain charities centers on the proper amount of reduction of the gross estate by specific bequests and administration expenses. There is no disagreement between the parties with respect to many of the items which are deductible from the gross estate as expenses and bequests in determining the residue which constitutes the charitable bequests. The specific issues herein are (1) whether the bequest to Doyle to be deducted in computing the residuary estate should be the amount agreed to between the parties in their settlement agreement or an amount representing one-fourth of the gross estate plus the value of the jewelry bequest to Doyle plus $100,000, and (2) what amount of attorneys' fees is properly deductible from the gross estate. Petitioner takes the position that since there existed a bona fide controversy *115 as to the amount of the bequest to Doyle under decedent's will and the codicils thereto, the settlement of this controversy resulted in only the amount received by Doyle thereby being the bequest to her, leaving the residue after this reduction for Doyle's bequests and other proper reductions as the amount of the residue bequest to the charities under the will. Petitioner relies on Helvering v. Safe Deposit Co., 316 U.S. 56 (1942), and Lyeth v. Hoey, 305 U.S. 188 (1938), as supporting this position. Although petitioner relies primarily on the contention that what each party was to receive under the settlement should be considered as having been received as a devise under the will, petitioner takes the alternative position that under Connecticut law the bequest in the holographic codicil was substitutional for that in the first codicil and not cumulative so that Doyle actually received under the settlement slightly more than she would have received under Connecticut law had litigation proceeded. Respondent contends that the settlement involved a disclaimer by Doyle of the $100,000 specific legacy and was thus in effect a gift by Doyle to the charities and *116 not a devise of this $100,000 by decedent to the charities. Respondent takes the position that since the disclaimer did not meet the requirements of section 2055 and the regulations pursuant thereto of a disclaimer which would entitle the estate to a charitable deduction, the gross estate should be reduced by this $100,000 as a specific bequest to Doyle in determining the residue going to the charities under decedent's will. It is respondent's position that if the settlement agreement should be interpreted as being otherwise than a disclaimer by Doyle of the $100,000 legacy contained in the first codicil, nevertheless the amount of $100,000 is deductible from the gross estate in computing the residuary estate since under Connecticut law the gift in the holographic codicil was cumulative of the $100,000 gift in the first codicil. Respondent recognizes that the cases of Helvering v. Safe Deposit Co., supra, and Lyeth v. Hoey, supra, relied on by petitioner, as well as such cases as Estate of Mary Clare Milner, 6 T.C. 874, 881-883 (1946) and In re Sage's Estate, 122 F. 2d 480 (C.A. 3, 1941), affirming 42 B.T.A. 1304 (1940), *117 hold that where during the course of the administration of an estate there is a legitimate dispute between the heirs and devisees, the amount received by an heir or devisee-party to the dispute under a settlement agreement is received as an inheritance by such heir or devisee. However, respondent contends that these cases are not controlling with respect to the settlement between Doyle, Owens, and the charities since under this settlement, Doyle renounced the $100,000 so that this amount went to the charities as a separate gift and not as a devise. Respondent relies on Bach v. McGinnes, 333 F. 2d 979 (C.A. 3, 1964), in support of his position. Respondent contends that under the law of Connecticut Doyle would have been entitled to one-fourth of the estate under the holographic codicil plus $100,000 under the first codicil since the gifts were cumulative. The case of Bach v. McGinnes, supra, involved a will which bequeathed the residue of the testator's estate in trust, the income to be payable to the testator's wife for her life and upon her death the principal to be divided and distributed among three relatives of the testator if then living, but if none of *118 the named legatees survived the testator's wife, the principal was to be distributed to an educational organization, recognized as a charity under the provisions of the estate tax law. The relatives who were named as legatees were all older than the testator's widow. The widow elected to take against the testator's will, which she was entitled to do under the State law (Pennsylvania) and received outright one-half of the estate. The widow informed the attorney for the charity of her intention to take against her husband's will if such action would insure the receipt of some amount of the estate by the charity. The attorney for the charity then arranged an agreement with the legatees whereby they each accepted a lump sum payment and the charitable organization received the balance of the one-half of the testator's estate which did not go to the widow under her election. The settlement was approved by the appropriate local court in Pennsylvania. The estate urged in support of a charitable deduction for the amount which the charitable organization was to receive under the settlement agreement, that there was a genuine dispute under the will and that the property received by the charity *119 under the compromise agreement constituted property received as an inheritance from the testator. The Court held against this contention, pointing out first that the bequest to the charity under the will was not a bequest which would be deductible as a charitable bequest since it was contingent upon the legatees predeceasing the widow, which contingency was not so remote as to be negligible. Under such circumstances the Court concluded that nothing was left to the charity under the will which would give rise to a charitable deduction since only a contingent interest was left to the charity. The Court, in Bach v. McGinnes, supra, further pointed out that under Pennsylvania law when there are no children and a widow elects to take against her husband's will, any legacies to take effect upon the death of the widow are accelerated, the widow's election to take under the intestate laws being equivalent, for this purpose, to her death. Since the Pennsylvania law was settled in this respect, the Court concluded that the will as modified by the widow's election, gave nothing to the charity and that what the charity received was from the relatives named as legatees, not from the *120 testator, and therefore the estate was entitled to no charitable deduction. The holding in Bach v. McGinnes, supra, is in accord with our holding in Estate of William A. Carey, 9 T.C. 1047 (1947), affirmed per curiam 168 F. 2d 400 (C.A. 3, 1948). William A. Carey involved a testator who died within 30 days after executing a will in which certain bequests were made to charitable organizations. Under Pennsylvania law, bequests for religious or charitable uses made within 30 days before the testator's death are void. Shortly after the testator's death the residuary legatees filed a document with the local Pennsylvania court in which the estate was to be administered agreeing to the payment of the specific bequests to the charities. We held that no charitable deduction was allowable since the charities received no bequest from the testator. What went to the charities went to them from the residuary legatees and not under the testator's will. In so holding we distinguished the case of Dumont's Estate v. Commissioner, 150 F. 2d 691 (C.A. 3, 1945), reversing 4 T.C. 158 (1944), pointing out that the Circuit Court in Dumont's *121 Estate had stated that what the charity there received came to it pursuant to a settlement of claim under which two separate wills had been offered for probate and the contest involved which was the valid will. The charity's claim was based on an earlier will so that the charity in the Dumont's Estate case was held in the opinion of the Circuit Court to have taken under a will and not as a purchaser which lacked inheritance rights because of the bequest to it being void. In the case of Estate of Blanche B. Gilbert, 4 T.C. 1006 (1945), we held that where a will left a residuary bequest to a charity and the next of kin contended that the testator lacked testamentary capacity when the will was made, the estate was entitled to a charitable deduction for the amount of the residuary estate which it received pursuant to a settlement with the heirs since the amount received by the charity was received by it as an inheritance by a devise under the will. In so holding we pointed out the distinction in such a situation and in a situation where nothing was left to the charity by the will or the will was void so that any amount received by the charity in settlement was received from *122 heirs or other devisees and not from the testator. As shown by these various cases, if the amount received by a charity under a settlement in a will contest would have been received under the will had the contest continued and the charity been successful, then the amount received under the settlement is received as an inheritance and gives rise to a charitable deduction in computing the net taxable estate. On the other hand if no valid gift is made by the will to the charity so that the settlement is in effect a gift by an heir or devisee to the charity, the amount received by the charity under such a settlement is not a charitable deduction in computing the net taxable estate. Our question therefore requires a determination of whether in fact the settlement made by the parties to the dispute concerning decedent's will amounted to a disclaimer by Doyle of $100,000 so that the charity took by this disclaimer, or whether it was a settlement of a real contest. Under the settlement Doyle agreed to accept $185,000 as her money legacy. Petitioner contends that there existed the possibility that she would receive substantially less than this amount should the Probate Court hold that the *123 bequest of one-fourth of the decedent's estate referred to one-fourth of decedent's net estate and that the bequest in the holographic codicil was substitutional for the $100,000 bequest and that there existed the possibility of her receiving approximately $283,000 should she be successful in her position that the bequest was of one-fourth of the gross estate and that this bequest and the $100,000 specific bequest in the first codicil were cumulative. Respondent makes some argument that at no time did the charities contend that Doyle was not entitled to the $100,000. The facts do not support this position of respondent. Although, as respondent points out, Owens offered to pay Doyle $100,000 after Doyle filed her application to dismiss the proceedings in the Probate Court in Connecticut on jurisdictional grounds, at this juncture only the will of November 10, 1955, and the codicils thereto of July 19, 1957, and November 8, 1958, were filed in the Probate Court, and under these documents without the holographic codicil considered, Doyle was entitled to the $100,000 specific legacy. Only after the Opinion of the Supreme Court of Errors on December 2, 1964, was it settled that the holographic *124 instrument should be probated as a codicil to decedent's will. After this opinion by the Supreme Court of Errors, the dispute as to whether the holographic codicil referred to one-fourth of the gross or net estate and whether the bequest in that codicil was cumulative to the one in the codicil of July 19, 1957, or whether it was substitutional of the earlier bequest arose. There did, therefore, exist a real dispute between the parties as to the amount to which Doyle was entitled which amount might vary from one-fourth of the net estate as a minimum amount to one-fourth of the gross estate plus $100,000 as a maximum amount. We therefore disagree with respondent that the charities recognized that Doyle was entitled to the $100,000 as provided in the codicil of July 19, 1957, for they were in fact contending that she was not entitled to that amount in addition to the amount left under the holographic codicil. Respondent's next contention is that since the agreement contained the provision that, "Doyle has renounced all claim in and to the legacy of $100,000 provided in the will and first codicil, and she will, upon demand, execute and deliver a formal instrument of renunciation" the *125 agreement was in fact a disclaimer by Doyle of the $100,000 and not a settlement of a will contest under which the charities could take in the nature of legatees. We disagree with respondent. Reading the settlement agreement as a whole, including the nature of the disagreements between the parties thereto set forth therein, shows that these words were used in order to make it unequivocally appear that the entire amount which would go to Doyle would be $196,100 of which $7,500 would be commissions as executrix and $3,600 would be on account of severance pay. We interpret the agreement as a settlement and true compromise between the parties and not as merely a disclaimer by Doyle of a $100,000 legacy. Therefore, there is no justification for considering the bequests to Doyle which are to be deductible in computing the residuary charitable bequest to include the $100,000 provided for in the first codicil to decedent's will unless under Connecticut law the bequests in this codicil and the holographic codicil are clearly cumulative. If a bona fide dispute could exist under Connecticut law as to whether the bequests in the two separate codicils were cumulative or the latter substitutional *126 for the former, then the settlement was such that had the litigation proceeded, the charities might have been able to sustain their contention that the holographic codicil was substitutional for the first codicil and if successful would have obtained under the State Court decision what they did obtain under the settlement. The charities under such circumstances would be considered to have received the amount which they received under the settlement as a devise. Helvering v. Safe Deposit & Trust Co. of Baltimore, supra, and Lyeth v. Hoey, supra.
In both Estate of William A. Carey, supra, and Selig v. United States, 73 F. Supp. 886 (E.D. Pa., 1947), affirmed per curiam 166 F. 2d 299 (C.A. 3, 1948), it was pointed out that under Pennsylvania law the bequests to the charities were void and not merely voidable. It was the lack of doubt under Pennsylvania law as to the result of any action the charities might have taken to obtain the amount which the heirs or other devisees signed over to them which caused the amounts received to be considered as received from the heirs or devisees and not from the testator. If the Connecticut law were *127 so clear that the bequest in the holographic codicil was cumulative of that in the first codicil that no true contest could exist, then a purported settlement would in substance be as the purported settlement in Estate of William A. Carey, supra, or in Bach v. McGinnes, supra, or Selig v. United States, supra, merely a gift by Doyle to the charities. In the instant case, neither party has called our attention to any Connecticut case dealing with circumstances comparable to those here involved. The general law, as well as the Connecticut law is that in construing a will, the intent of the testator as determined from the language of the will as a whole, considered in the light of the surrounding circumstances under which written, is controlling. See Peyton's Estate v. Commissioner, 323 F. 2d 438 (C.A. 8, 1963), affirming a Memorandum Opinion of this Court and Smith v. Foord, 43 Conn. 550, 124 Atl. 2d 224, 227 (1956). In the instant case the holographic instrument was entitled "My Last Will" as distinguished from being entitled a codicil. The statement that "one-fourth of all my estate shall go to Hazel J. Doyle" was followed *128 by a reference to the balance of the estate being disposed of as in the former will. When this wording is considered in connection with the circumstances under which the holographic codicil was written, there is sufficient doubt as to the proper construction of the holographic codicil to raise a substantive question under Connecticut law as to whether the bequest was cumulative or substitutional. See Blakeslee v. Pardee, 76 Conn. 263, 56 Atl. 503 (1903) and Thompson v. Betts, 74 Conn. 576, 51 Atl. 564 (1902). We do not deem it necessary to decide on the basis of the facts in the instant case whether under Connecticut law the gift to Doyle of one-fourth of decedent's estate was substitutional or cumulative of the previous gift of $100,000. We conclude that the Connecticut law in this area is not so well settled as to result in there existing no substantive issue in this regard at the time the parties entered into the settlement. The fact that there did exist a bona fide issue is sufficient to cause the residuary estate which the charities took under the settlement to be in substance received by them as legatees under the will. We therefore sustain petitioner's *129 position on this issue. The next issue to be determined in deciding the amount of the residuary estate is the proper deduction from the gross estate for attorneys' fees. If the entire $125,000 claimed by petitioner to be allowable as a deduction from the gross estate is not properly allowable, the question arises of whether the disallowed portion should be used as a reduction of the residuary estate otherwise determined in computing the deduction for the charitable bequest. Although respondent disallowed all deduction for attorneys' fees in the notice of deficiency, on brief he concedes that $30,000 is a reasonable amount of attorneys' fees allowable under the laws of Connecticut and therefore properly deductible as part of administration expenses under section 2053. The evidence in the instant case shows, and we have so found, that $30,000 would have been reasonable attorneys' fees for handling the legal work for decedent's estate had no problem with the probate of the will or litigation with respect thereto arisen. The evidence further shows that the amount of $125,000 ($70,000 payable to attorneys for Doyle and $55,000 payable to attorneys for Owens and the charities) is a reasonable *130 attorneys' fee for the legal work in connection with settling the estate including the litigation which did occur. Respondent argues that since the agreement of the parties has not been approved by the Probate Court, there is no definite proof that the Court will allow the $125,000 amount as reasonable fees for the legal services rendered. He also argues that petitioner has failed to prove that the $125,000 is a reasonable amount of attorneys' fees. Petitioner offered the testimony of a Connecticut attorney experienced in handling decedents' estates as to the reasonableness of these fees. We are persuaded by this evidence that fees of $125,000 are reasonable for the legal work done by the attorneys. The testimony of petitioner's witness is corroborated by the fact that adversary parties agreed to the amount of $125,000 as attorneys' fees to be paid. We conclude that the evidence is sufficient to carry petitioner's burden of showing the reasonableness of attorneys' fees of $125,000 for the work done in connection with the normal work of settling the estate plus the work of handling the litigation that did occur. Respondent's major contention is that the fees in the instant case *131 were not for the benefit of the estate but were for the benefit of the devisees. Respondent relies on Emma Peabody Abbett, 17 T.C. 1293 (1952), and Commercial Nat. Bank of Charlotte v. United States, 196 F. 2d 182 (C.A. 4, 1952). In Emma Peabody Abbett, supra, we held that legal expenses attributable to litigation concerning whether undue influence was exerted on the grantor of a trust were for the benefit of certain individuals and not the estate and therefore even though paid by the estate were not properly classed as an administrative expense deductible by the estate. In Commercial Nat. Bank of Charlotte v. United States, supra, the Court held that legal fees paid to the lawyers of the testator's relatives, were paid for the benefit of the legatees and not for the benefit of the estate. These cases conclude, as do a number of similar cases, that attorneys' fees paid for the benefit of individual heirs or legatees, as distinguished from for the benefit of the estate, are not deductible from the gross estate in computing the net taxable estate. This leaves us with the issue in the instant case of whether the $125,000 of attorneys' *132 fees were for the benefit of the estate or for the benefit of the legatees. Section 185 of Title 45 of Chapter 785 of the Connecticut General Statutes[2] provides for payment out of the estate of expenses of the executor or administrator in a will contest. This statute does not merely provide that the Court "may" allow expenses but provides that the Court of Probate "shall allow to the executor his just and reasonable expenses in defending the will * * * whether or not the will is admitted to probate." The issue before the Connecticut Court concerned whether the holographic instrument would be admitted to probate, either as a will or as a codicil. Doyle was named as executrix in the holographic instrument and Owens as executor in the will of November 10, 1955. Therefore, under this statute both Doyle and Owens were entitled to have paid out of the estate their reasonable expenses including attorneys' fees in defending the will. This Court has considered the proper interpretation of the Connecticut Statute under circumstances quite comparable to those in the instant case. In Estate of Christine Swayne, 43 T.C. 190 (1964), there had been two wills executed by the testator *133 within a 6-month period. Each of these wills was presented for probate by the executor named therein and the later will was admitted to probate by the Probate Court. Appeal was taken from the action admitting the later will and denying probate to the earlier one, and after appeal, a compromise agreement was entered into between the parties whereby they agreed that the earlier will be admitted to probate with certain modifications agreed to between the parties. The issue was whether the legal fee incurred by the executor of the will which was not admitted to probate under the compromise agreement was properly deductible from the gross estate as an administrative expense in determining the net taxable estate. In holding that this fee was deductible, we pointed out that under Section 163 of Title 45 of Chapter 785 of the General Statutes of Connecticut every executor having knowledge of his appointment is required to exhibit the will for probate and concluded that under this statute the executor named in each of the wills was required by law to exhibit it for probate. We further concluded that the Probate Court was required under Section 185 of Title 45 of Chapter 785 of the General Statutes *134 of Connecticut to allow to the executor his just and reasonable expenses incurred in defending such a will. In so holding we relied on Estate of Helen Dow Peck, 40 T.C. 238 (1963), wherein we held that similar attorneys' fees paid by the administrator to the executor of a will which was denied probate on the ground that the testator, at the time it was made, lacked testamentary capacity, were deductible. In both Estate of Christine Swayne, supra, and Estate of Helen Dow Peck, supra, the agreement of the parties as to the payment of legal expenses had been approved by the Probate Court at the time of the trial of the case in this Court. In the instant case the agreement has been submitted to the Probate Court but not approved by it. This distinction in the facts between the Swayne and Peck cases and the instant case is not one which causes the holdings in those cases to be inapplicable here. *135 The laws of Connecticut require allowance of "just and reasonable expenses" to an executor in defending a will. In computing allowable deductions for estate tax purposes, administrative expenses have been allowed where the evidence shows the amount to be just and reasonable even though such expenses had not been approved by the State court or paid. In Estate of John E. Cain, Sr., 43 B.T.A. 1133, 1142 (1941), we specifically pointed out that the statute does not require that the court having jurisdiction must have made an allowance of attorneys' fees in order for such fees to be deductible as an administrative expense if the fees are allowable under the State law. Where the State law provided for an allowance of reasonable expenses for such fees, an amount shown to be such a reasonable fee was allowable as a deduction. In that particular case the fee in issue was the attorney's fee for the handling of the estate tax controversy which was being litigated before this Court. It might be noted that the agreed attorneys' fees in the instant case include the fee for handling of the instant case. The conclusion in Estate of John E. Cain, Sr., supra, was in accord *136 with the long established holding of this Court that it is not necessary that attorneys' fees have been approved by the State court or actually paid, but only that they be allowable under the State law, in order to entitle the estate to a deduction of such fees as an administrative expense. See Walter W. Voelbel, Executor, 7 B.T.A. 276 (1927). In Commercial Nat. Bank of Charlotte v. United States, supra, the Court refused to allow a deduction in computing the net taxable estate for attorneys' fees for litigation which had taken place since the fees for which deduction was claimed had not been approved by the court having jurisdiction over the estate. In that case the Court pointed out that under North Carolina law, fees for services rendered to the parties in a caveat to a will did not automatically become costs of the proceedings when they were incurred and paid. The Court stated that whether to allow these fees as an estate expense is in the discretion of the Court having jurisdiction over the estate. Since that Court had made no determination allowing the fees as an expense of the estate and had not been called upon to do so, such fees had not been shown *137 to be allowable under the North Carolina law. Under the Connecticut law, the Court is required to allow reasonable expenses to the executor in defending a will. We therefore conclude that the $125,000 of attorneys' fees are properly deductible from decedent's estate except to the extent such deduction may be prohibited by the provisions of section 642(g). [3]
In the instant case, deductions of attorneys' fees totaling $25,000 were claimed on the income tax returns of decedent's estate for the years 1962, 1963, *138 and 1964, and waivers filed of the right to have such amounts allowed at any time as an estate tax deduction. Petitioner contends that even though such waivers were filed, the deduction of the amount, in computing the estate tax, should be allowed since the income was to go to the charities and therefore was not taxable, except for a small portion which was to go to the beneficiary under a trust set up in the second codicil. The evidence shows that for each of the years 1962, 1963, and 1964, the estate has filed a claim for refund of income tax on the ground that the income was to go to charities and therefore was not taxable. Each claim includes the statement that when the return was filed, there was a will contest and thereafter there were questions of construction, but that it had been determined that no beneficiary who is not an exempt charity has any interest in the income except David Sapko to an extent specified in each claim. The record does not show that any action has been taken with respect to these claims. Each of these claims was filed in July 1965. We made no finding with respect to these claims in our findings of fact since we do not have before us any question with *139 respect to the estate income tax as such and need not pass on whether petitioner's income tax for these years has been overpaid. Whether or not ultimately the estate will obtain a refund of the tax paid is not determinative of the estate tax issue in the instant case. In Darby's Estate v. Wiseman, 323 F. 2d 792 (C.A. 10, 1963), the executors contended that they should be relieved from the waiver of the right to claim a deduction in computing estate tax, signed by the executor when estate income tax returns were filed since they made a mistake of fact and law in electing to take the deduction on the income tax return. The Court held that the provision barring double deduction prohibited allowance of the deduction for estate tax purposes because of the deductions having been taken on the income tax returns and a waiver filed with the return. In so holding the Court stressed the reasonableness of the regulations giving the executor considerable leeway in deciding whether to use administrative expenses for income or estate tax purposes. Calling attention to the fact that the parties did not claim ignorance of the law and that the executors had a free choice which they had *140 made, the Court concluded that "the mistake as to the tax consequences does not entitle them to make a second choice." In the instant case there is no showing that the executrix, when she made her free choice to deduct attorneys' fees to the extent of $25,000 on the income tax returns for 1962, 1963, and 1964, was under any mistake as to fact or law. The instant case falls squarely within the prohibition against the double deduction, and we therefore hold that only $100,000 of attorneys' fees are deductible by petitioner from the gross estate in computing the net estate since the estate has elected to deduct $25,000 of such fees on the income tax returns of the estate and waived the right to a deduction of that amount in computing estate tax. Since we have held a portion of the attorneys' fees not to be deductible in computing the net estate, the question arises whether the charitable residue should be reduced by the $25,000 not allowed as a deduction in computing the net estate. The evidence shows that these fees were claimed as deductions on the income tax returns but does not show that they were payable or paid out of income. The clear inference from all of the facts is that *141 they are not payable out of income but are payable out of the residuary estate. Insofar as the record shows, they were actually paid out of the residuary estate. Under such circumstances the cases hold that the residuary estate must be reduced by such amount of attorneys' fees in computing the amount of the charitable deduction. Republic National Bank of Dallas v. Commissioner, 334 F. 2d 348 (C.A. 5, 1964), affirming 39 T.C. 85 (1962), and Luehrmann's Estate v. Commissioner, 287 F. 2d 10 (C.A. 8, 1961), affirming 33 T.C. 277 (1959). We therefore hold that the residuary estate otherwise determined should be reduced by the $25,000 of attorneys' fees claimed as a deduction on income tax returns in computing the charitable deduction from the gross estate. We do not understand that petitioner now contends that in computing the charitable deduction, the residuary estate otherwise determined should not be reduced by the Connecticut succession or inheritance taxes and the Federal estate taxes payable out of the residuary estate. It also appears that petitioner no longer disagrees as to the proper formula to use in making this computation. *142 In any event we hold that reduction of the residuary estate by the State inheritance or succession taxes and the Federal estate taxes which are payable out of the residue is proper in computing the amount of the charitable deduction for the residuary bequest to the charities. Harrison v. Northern Trust Co., 317 U.S. 476 (1943). Decision will be entered under Rule 50. Footnotes
2. Sec. 45-185. Expenses of executor or administrator in will contest. The court of probate having jurisdiction of the testate estate of any person shall allow to the executor his just and reasonable expenses in defending the will of such person in the probate court, whether or not the will is admitted to probate; and, if there is an appeal from the order or decree of such court, admitting or refusing to admit to probate the will of such person, shall allow to the executor or administrator his just and reasonable expenses in supporting and maintaining or defending against such will, on such appeal, and such expenses shall be charged by such court pro rata against the respective rights or shares of the devisees and legatees under such will and the distributees of such estate. (1949 Rev., S. 6973)↩
3. Sec. 642(g) Disallowance of Double Deductions. - Amounts allowable under section 2053 or 2054 as a deduction in computing the taxable estate of a decedent shall not be allowed as a deduction in computing the taxable income of the estate, unless there is filed, within the time and in the manner and form prescribed by the Secretary or his delegate, a statement that the amounts have not been allowed as deductions under section 2053 or 2054 and a waiver of the right to have such amounts allowed at any time as deductions under section 2053 or 2054. This subsection shall not apply with respect to deductions allowed under part II (relating to income in respect of decedents).↩