The **CONNECTICUT BANK AND TRUST COMPANY**, Executor of the Estate of Charles A. Hunter, Plaintiff,

v.

**UNITED STATES of America,** Defendant.

Civ. A. No. 12668.

United States District Court, D. Connecticut.

April 1, 1970.

**480**

S. Michael Schatz, Schatz & Schatz, Hartford, Conn., for plaintiff.

Daniel J. Dinan, U. S. Dept. of Justice, Washington, D. C., for defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CLARIE, District Judge.

The Connecticut Bank and Trust Company (Bank), acting as executor of the estate of Charles A. Hunter, has brought suit to recover an alleged overpayment of the estate's federal estate tax and the government has moved for summary judgment, pursuant to Rule 56, Fed.R. Civ.P., on the grounds that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. While plaintiff's counsel asserts that there still remain facts to be litigated, counsel for the government represented, in effect, that if the Court does not adopt its interpretation of the law, judgment may enter for the plain-

tiff.[1] The Court finds the government's claim is not valid and in light of its waiver of any other defenses it might have had, the Court will treat the matter as if cross-motions for summary judgment had been filed and render judgment for the plaintiff in the prayed for amount.

Charles A. Hunter died on April 23, 1961. His will, which was executed on April 27, 1956, established two trusts. The first testamentary trust, designated as the A Trust, consisted of the maximum marital deduction amount allowable. Hunter's widow was to receive all the income from this trust for life. In addition, she could obtain so much of the principal as she requested in writing up to a limit of $100,000. The trustee was authorized to invade the corpus when it considered such action proper "for her support in the manner to which she is accustomed." Finally, the widow was given a testamentary power of appointment over the A Trust corpus. In default of her exercise of this power, the remainder was to go into a trust hereinafter described as the B Trust.

The terms of the B Trust provided that the widow was to receive the income for life and after the termination of her life estate, several specific bequests were to be made and the remainder was to be held in trust for several specified charitable beneficiaries. The will further provided that all taxes assessed against the estate were to be paid out of the B Trust.

The estate filed a federal estate tax return on July 20, 1962, and, save for a minor adjustment, assented to by the executor, it was accepted as filed. That original return claimed a charitable deduction for the remainder interest of the B Trust, equaling $698,761.90. In computing this deduction in Schedule N of the estate tax return, the executor started with the value of the gross estate

---

1. Government counsel's exact words were: "The only thing in this case is the power of appointment. As a matter of fact, your Honor, if we are right, we are entitled to have the complaint dismissed. And if we are wrong, we're just standing on our brief and on our motion here, as a matter of law." Transcript of hearing of Jan. 12, 1970 at page 20.

and subtracted therefrom all moneys and properties which were or would be otherwise distributed. The Connecticut succession taxes paid and deducted under this procedure amounted to $151,-519.75. The method of calculation pursuant to § 2055(c) of the Internal Revenue Code of 1954, limited the charitable deduction to the amount which would be actually available to the designated charitable beneficiaries. See 34 Am. Jur.2d, Federal Taxation, Para. 8676. The Connecticut succession tax deducted from the gross estate in the federal estate tax return was paid in accordance with § 12–355, Conn.Gen.Stat. The state tax law provides that if it is impossible to compute the present value of any property to be transferred, the executor and the tax commissioner may enter into an agreement as to what the tax liability of the estate will be and such agreement will be binding on the parties. If an agreement cannot be reached then, under § 12-355(b), the estate is to pay a tax based "upon the assumption that the contingencies will so resolve themselves as to lead to the highest tax possible under the provisions of this chapter." This latter procedure was followed by the Bank in the present case.

On March 4, 1966 Hunter's widow executed a release of her power of appointment over the remainder of the A Trust,[2] as provided in the fifth paragraph, subparagraph C of said will. Connecticut succession tax was then recomputed pursuant to § 12–355(b); and said tax was reduced to $20,590.73. The estate has been refunded the excess paid in the sum of $130,929.03 and that amount has now gone into and been added to the charitable remainder of the B Trust.

The estate now claims that the amount of excess state taxes paid, $130,929.03, has now vested in the charities; the charitable remainder under Schedule N has increased from $698,761.90 to $829,-690.63. Since this increase in the charitable remainder under Schedule N is deducted in computing the total allowable

deductions, the net taxable estate will cause a reduction of the federal estate tax liability from $120,472.25 to $77,-346.00, resulting in an overpayment of the federal estate tax in the amount of $43,036.25.[3] However, it is the government's claim that since the release of the remainder of the A Trust, allowing it to pass into the charitable remainder of the B Trust, did not occur within the one year time limitation set out in § 2055 (b) (2) (C) of the Internal Revenue Code, it is ineffective in reducing the estate's federal tax liability.

The government relies on § 2055(b) (2) in seeking to defeat petitioner's claimed refund. That section provides:

"For purposes of this section, in the case of a bequest in trust, if the surviving spouse of the decedent is entitled for life to all the net income from the trust and such surviving spouse has a power of appointment over the corpus of such trust exercisable by will in favor of, among others, organizations described in subsection (a) (2), such bequest in trust, reduced by the value of the life estate, shall, to the extent such power is exercised in favor of such organizations, be deemed a transfer to such organizations by the decedent if (four conditions are then set out, none of which are relevant for the purposes of this decision.)".

While this case does involve the disclaimer of a power of appointment, which results in the remainder value of the A Trust going to charitable beneficiaries, and thus generating an additional charitable deduction for Connecticut inheritance tax purposes, the estate is not seeking an increased charitable deduction from the federal government based upon the value of said charitable remainder. If that were the case, the requirements of the one-year time limitation for election, contained in § 2055 (b) (2) not having been met, such a claim would necessarily fall. Rather, the estate claims to be entitled to an in-

---

2. Plaintiff's Exhibit E.

3. Plaintiff's Exhibit D.

creased charitable deduction based on the final adjustment of the Connecticut succession tax liability. The fact that the reduction in state taxes stemmed from the release of the power of appointment which is a permissible and quite ordinary practice in state tax procedure, is not a controlling factor in this proceeding.

Section 2055(b) has been given a literal interpretation by the courts. Estate of Miller v. Commissioner of Internal Revenue, 48 T.C. 251 (1967), aff'd, 400 F.2d 407 (3rd Cir. 1968) (allowing a decedent's estate *both* a marital deduction for the value of the qualifying portion of the corpus of a trust and a charitable deduction for the value of the remainder interest of that same trust which was to pass to charitable beneficiaries in a manner so as to qualify under § 2055(b) (2)). This Court is "not aware of any authority which would give (it) the power to rewrite by judicial fiat an unambiguous statute in order to clear up ambiguities in its legislative history." 48 T.C. at 260, 400 F.2d at 410. The facts of this case do not bring it within the language of § 2055(b) and the government's reliance thereon is ill-founded.

The government further argues that the taxpayer cannot do indirectly that which it is prohibited by statute to do directly. This argument is not valid, because the A Trust is wholly exempt from any federal taxes under the marital deduction provisions of the Code.[4] Thus, when the taxpayer successfully obtained a reduction in the state inheritance tax liability by the execution of a waiver of the power of appointment, he in no way changed the taxable status of the A Trust for federal tax purposes; nor does it afford a double deduction as was the situation in the *Miller* case, supra. The sole benefit claimed is that which accrued from the state tax adjustment, which was outside the scope of federal law.

The cases cited by the government as supporting its position are inapposite. Davison v. Commissioner of Internal Revenue, 81 F.2d 16 (2d Cir. 1936) and Commissioner of Internal Revenue v. Macaulay's Estate, 150 F.2d 847 (2d Cir. 1945), both deal with situations wherein the estate was endeavoring to directly deduct as a charitable deduction the value of the remainder of a trust, which was subject to a power of appointment and where pursuant to said power, or in the light of its disclaimer, said remainder was to go to charitable beneficiaries. As has been already pointed out, no claim is being made here for an additional charitable deduction representing the value of the remainder of the A Trust, which will go to charitable beneficiaries as a result of the disclaimer of the power of appointment. The third case cited by the government, Burdick v. Commissioner of Internal Revenue, 117 F.2d 972 (2d Cir. 1941), may also be distinguished. There, the effectiveness of certain alleged charitable bequests was wholly dependent upon the actions of the two parties who held powers of appointment with respect to the funds involved. These parties were under no compulsion to exercise the powers, and no deduction was allowed on the grounds that the contingencies involved were too great. However, in this case, the degree of uncertainness as to whether or not the remainder of the A Trust would go to charitable beneficiaries is not in issue. Connecticut decided the charitable remainder issue in the tax refund proceedings and it apparently concluded that a valid charitable bequest was present. Now, the estate is simply claiming the refund adjustment of the lower Connecticut tax as that amount is reflected by a greater residue in the charitable B Trust.

Judgment may enter for the plaintiff in the prayed for amount, $43,036.25, together with statutory interest as provided by law.

So ordered.

4. § 2056, Int.Rev.Code of 1954.